1

2

3

4

5

6

7

**\*E-Filed 11/30/2010\***

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                          SAN FRANCISCO DIVISION

11

12   JOHN T. LAWTHER,                          No. C 10-0054 RS

13                    Plaintiff,               **ORDER GRANTING IN PART AND**
                                               **DENYING IN PART DEFENDANTS'**
14        v.                                   **MOTION TO DISMISS SECOND**
                                               **AMENDED COMPLAINT**
15   ONEWEST BANK, et al.,

16

17                    Defendants.
     _____/

18                          I.   INTRODUCTION

19        This matter relates to the impending foreclosure on plaintiff's home.  Plaintiff advances

20   various claims that would seek to avoid the end result of that process: a foreclosure sale.

21   Defendants Onewest Bank ("Onewest") and Mortgage Electronic Registration Systems, Inc.

22   ("MERS") move to dismiss plaintiff Lawther's Second Amended Complaint (SAC) in its entirety

23   for failure to state a claim for relief.[1]  Lawther advances five claims: (1) negligence per se; (2)

24   violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, et seq.; (3)

25   breach of the oral modification agreement; (4) breach of implied covenant of good faith; and (5)

26   unlawful business practices, as proscribed by California's Unfair Competition Law, Cal. Bus. &

27

28   _____
     [1] On October 21, 2010, Aztec filed a declaration of non-monetary status.  Lawther timely opposed
     the declaration.

United States District Court
For the Northern District of California

Prof. Code § 17200.  As explained below, Lawther has failed to allege a colorable negligence per se or RESPA claim and, accordingly, these must be dismissed with leave to amend.  Lawther has adequately alleged a breach of contract claim and defendants' motion must be denied insofar as it is directed at this claim.  To the extent Lawther's breach of the implied covenant of good faith and fair dealing and UCL claims target the alleged oral modification contract or its breach, these claims must be accordingly narrowed by amendment.  Insofar as these claims target conduct tethered to either the negligence per se or RESPA violations, defendants' motion to dismiss these claims is granted. This matter was submitted without oral argument, pursuant to Civil Local Rule 7-1(b).

## II.  FACTS & PROCEDURAL BACKGROUND

Plaintiff presents the following facts which, for purposes of a motion to dismiss, must be accepted as true.  In January of 2006, Lawther refinanced a loan obtained on real property located at 5991 Sky Farm Drive in Castro Valley, California.  To do so, he engaged CMG Mortgage Services and IndyMac as lender and loan servicer.  MERS was named as a nominal beneficiary on the Deed of Trust.  IndyMac's assets and obligations were eventually purchased by Onewest.  Accordingly, Lawther's SAC treats Onewest as the successor in interest to IndyMac.  By September of 2008, Lawther defaulted on his loan.  He telephoned Onewest in an attempt to modify the terms of his loan agreement and avoid foreclosure.  In around February of 2009, he was able to secure a verbal commitment from Onewest that allowed him to engage in a special forebearance plan.  Its terms were as follows: (1) for a total of three months, Lawther's monthly payment would amount to $3,243.68; and (2) a balloon payment of $25,000 would be imposed if Lawther missed any monthly payment.  Lawther made three payments, as agreed, in March, April and May of 2009.  At the end of the period, Lawther expected that Onewest would modify the terms of his loan agreement permanently: "Onewest promised to modify Plaintiff's loan without requiring the balloon payment since he complied with his performance obligations under the verbal agreement."  SAC ¶ 20. Onewest did not modify Lawther's loan obligation, however, but sought continued monthly payments in the amount of $5,800.

No. C 10-0054 RS
ORDER

2

United States District Court
For the Northern District of California

1    Onewest did not modify plaintiff's loan obligation, Lawther concludes, because it lacked the

2    authority to do so. He theorizes that Onewest is not the "true beneficiary" or "holder in due course"

3    of the Deed of Trust. To discover the identity of such a party, Lawther sent a qualified written

4    request ("QWR") to Onewest on November 11, 2009. A copy of his QWR accompanies his SAC

5    and includes 43 separate requests for documents or other information. While Onewest did respond

6    to the QWR, but only with a denial of any obligation to supply the information or documents

7    requested absent some form of payment. This response, Lawther avers, violated certain provisions

8    of the RESPA statute.

9    On July 17, 2009, an entity called Aztec Foreclosure Corporation ("Aztec") recorded a

10   Notice of Default and Election to Sell Under Deed of Trust (Lawther refers to Aztec in the SAC

11   occasionally as "Doe One"). The Notice of Default describes Aztec as "trustee." Lawther points

12   out, however, that nothing in the record suggests Aztec was a trustee at that point in time. On

13   October 20, 2009, MERS recorded a Substitution of Trustee, which effectively substituted in Aztec.

14   While the document was recorded in late October, it asserts that the actual assignment occurred on

15   July 27, 2009 (eleven days following the date on which Aztec recorded the Notice of Default).

16   Attached to the Substitution is an affidavit prepared and signed by an Aztec representative,

17   indicating that a copy of the Substitution was mailed prior to recording to all parties who would

18   have been entitled to receive a copy of the earlier Notice of Default. According to this affidavit,

19   these copies were sent on October 19, 2009. A Notice of Trustee Sale was also recorded on October

20   20, 2010. Honing in on the gap in time between when Aztec filed the Notice of Default and when

21   MERS recorded the Substitution of Trustee, Lawther insists Aztec did not have legal authority to

22   file the Notice of Default. Lawther contends this fact renders not merely the Notice of Default but

23   also the subsequent Notice of Trustee Sale inoperative.

24   Lawther initiated this matter on January 6, 2010. Roughly five months after filing his

25   Complaint, Lawther filed an ex parte application for a temporary restraining order blocking the

26   foreclosure sale of the property in dispute. The previously assigned judge denied Lawther's

27   application, finding that plaintiff had failed to show the requisite likelihood of success on the merits

28

No. C 10-0054 RS
ORDER

3

United States District Court

For the Northern District of California

1   to warrant equitable relief.  After defendants filed a motion to dismiss, Lawther submitted a First

2   Amended Complaint ("FAC").  Defendants then moved to dismiss that complaint and, on August

3   27, 2010, the Court granted defendant's motion in its entirety but afforded Lawther leave to amend.

4   One month later, Lawther filed a Second Amended Complaint ("SAC").  It is this filing that is the

5   subject of the motion to dismiss at issue here.  In the SAC, Lawther added a negligence per se claim

6   and abandoned his reformation claim.  Otherwise, the claims in the SAC largely mirror those in the

7   FAC.  To date, the property in dispute has not been sold and, apparently, Lawther still resides there.

8                                              III. LEGAL STANDARD

9           As noted, for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a

10  plaintiff's factual allegations must be accepted as true and the complaint construed in the light most

11  favorable to that party.  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).  Dismissal is appropriate

12  where a complaint lacks "a cognizable legal theory or sufficient facts to support a cognizable legal

13  theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citation

14  omitted).  In considering a Rule 12(b)(6) motion, a district court generally may not look beyond the

15  pleadings, *Fort Vancouver Plywood Co. v. United States*, 747 F.2d 547, 552 (9th Cir. 1984), with

16  the exception of material properly submitted as part of the complaint or items for which a court may

17  take judicial notice.  *Amfac Mtg. Corp. v. Arizona Mall of Tempe*, 583 F.2d 426, 429-30 (9th Cir.

18  1978); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).[2]

19          Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading include a "short

20  and plain statement of the claim showing that the pleader is entitled to relief."  The Supreme Court

21  has instructed that this mandate does not require "detailed factual allegations," but "demands more

22  than an unadorned, the-defendant-harmed-me accusation" or "naked assertion[s] devoid of further

23

24  [2] Plaintiff has attached several documents to his SAC, including the itemized request for financial
    information sent to Onewest that plaintiff characterizes as a Qualified Written Request.  Defendants
25  ask that the Court take judicial notice, pursuant to Federal Rule of Evidence 201(b), of several
    documents in support of their motion to dismiss: (1) the Deed of Trust recorded on January 13,
26  2006; (2) the Notice of Default recorded on July 17, 2009; (3) a Substitution of Trustee, recorded on
    October 20, 2009; and (4) a notice of trustee's sale recorded on or about October 20, 2009.  These
27  are all matters of public record whose accuracy plaintiff does not contest.  The Court takes judicial
    notice of each.  *See Lee*, 250 F.3d at 689.

28
                                                                        No. C 10-0054 RS
                                                                        ORDER

                                              4

United States District Court

For the Northern District of California

1  factual enhancement." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks

2  omitted).  "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements

3  of a cause of action will not do.'" *Id.* (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

4  (2007)).

5      Federal Rule of Civil Procedure 15(a) instructs that leave to amend a complaint after

6  dismissal "shall be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182

7  (1962).  "Rule 15's policy of favoring amendments to pleadings should be applied with extreme

8  liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).  That

9  said, a Court may foreclose amendment where it would be futile or subject to dismissal.  *See Gadda*

10  *v. State Bar of Cal.*, 511 F.3d 933, 939 (9th Cir. 2007).

11                               IV. DISCUSSION

12    A.  Negligence Per Se

13      Defendants insist Lawther has not pleaded a colorable negligence per se claim.  Negligence

14  per se is an evidentiary presumption that a party failed to exercise due care if: (1) it violated a

15  statute, ordinance, or regulation of a public entity; (2) the violation proximately caused death or

16  injury to a person or property; (3) the death or injury resulted from an occurrence of the nature the

17  statute, ordinance, or regulation was designed to prevent; and (4) the person suffering the death or

18  the injury to his or her person or property was one of the class of persons for whose protection the

19  statute, ordinance, or regulation was adopted.  Cal. Evid. Code § 669.  The negligence per se

20  doctrine does not establish a claim for relief distinct from negligence. *Cal. Serv. Station & Auto.*

21  *Repair Ass'n v. Am. Home Assurance Co.*, 62 Cal. App. 4th 1166, 1178 (1998) ("[A]n underlying

22  claim of ordinary negligence must be viable before the presumption of negligence of Evidence Code

23  section 669 can be employed.").  Instead, the negligence per se doctrine treats a statutory violation

24  as evidence of negligence. *See Sierra-Bay Fed. Land Bank Assn. v. Superior Court*, 227 Cal. App.

25  3d 318, 333 (1991).

26      Lawther's negligence per se claim relies on a theory that defendants were required to adhere

27  to the statutory requirements of California Civil Code sections 2924 and 2934a but failed to do so.

28

United States District Court
For the Northern District of California

1    Lawther then insists these failures will ultimately result in the foreclosure sale of his home.

2    Specifically, Lawther claims that Aztec did not have authority as trustee on July 17, 2009 to mail

3    and record the Notice of Default three months prior to the date on which MERS recorded the

4    Substitution of Trustee and eleven days before MERS executed the substitution.  As a result,

5    Lawther contends the Notice of Default must be considered "void ab initio."  He suggests the Notice

6    of Trustee Sale was tainted by the defective Notice of Default and should also have no legal effect.

7    In the alternative, Lawther argues that MERS—as a "nominal" beneficiary to the Deed of Trust—

8    lacked the authority to substitute Aztec as trustee at all.

9         California Civil Code section 2924 controls the non-judicial foreclosure process in

10   California generally and, specifically, outlines what a Notice of Default must contain and from

11   whom it may issue.  Section 2924(a)(1) provides that foreclosure proceedings are commenced when

12   a "trustee, mortgagee, or beneficiary, or any of their authorized agents" files a notice of default.

13   Section 2934a establishes the process by which a trustee may be substituted.  Lawther does not

14   argue Aztec violated the terms of section 2934a when it was ultimately substituted as trustee so

15   much as he insists the substitution either occurred too late or, in the alternative, that MERS lacked

16   authority to make the substitution.

17        Aztec would plainly have had authority to issue the Notice of Default if it acted as trustee or

18   the agent of the trustee, beneficiary, or mortgagee.  Defendants appear to argue that Aztec was, if

19   not yet the trustee, then at least an agent of one of the relevant parties.  Lawther denies that Aztec

20   was an authorized agent.  For support, he points to the Notice of Default which does describe Aztec

21   as "trustee" and not as "agent" to any party to the Deed of Trust.  Whether or not Aztec acted at the

22   time of the filing of the Notice of Default as an agent within the meaning of section 2924, then, is a

23   question of fact and is not appropriately resolved in defendant's favor on a motion to dismiss.  *See,*

24   *e.g.*, *Castillo v. Skoba*, No. 10-1838, 2010 WL 3986953, at *2 (S.D. Cal. Oct. 8, 2010) (accepting

25   argument that factually similar substitution discrepancy would render notice of default invalid but

26   noting that evidence entity acted as authorized agent would render moot "any deficiencies in the . . .

27   substitution of trustee").

28

United States District Court

For the Northern District of California

Defendants contend, however, that the effect of the timing problem cannot be to render the Notice of Default or any subsequent document void.  In this sense, they suggest that because Aztec ultimately *did* have the authority to initiate foreclosure proceedings as trustee—and, indeed, had such authority just eleven days later—Lawther cannot claim he was in any way harmed or prejudiced by receipt of a Notice of Default that was otherwise valid.  Lawther disagrees.  Neither party presents persuasive authority to support their respective arguments.  The Ninth Circuit has yet to consider whether a district court should treat a Notice of Default filed under such circumstances as automatically void or require a showing of prejudice to the plaintiff before invalidating that document.  While numerous district courts in this circuit have considered this precise factual scenario, several have interpreted the situation differently.

*Castillo v. Skoba* sports language that supports Lawther's theory.  No. 10-1838, 2010 WL 3986953, at *2 (S.D. Cal. Oct. 8, 2010).  There, an entity called Cal-Western recorded a notice of default.  MERS substituted Cal-Western as trustee under the deed of trust in a document dated May 17, 2009, but recorded the Substitution on June 7, 2009.  Accordingly, Cal-Western was not yet a trustee when it filed the notice of default.  The Court granted plaintiff's request for a temporary restraining order enjoining a foreclosure sale, under a theory that the power of sale depends on a properly recorded notice of default.  *But see Marks v. Green Tree Servicing*, No. 10-3593, 2010 WL 4347943, at *7 (N.D. Cal. Oct. 27, 2010) (finding that the date of *assignment*, rather than recording, of authority to file a notice of default is determinative).  The Court agreed that the timing irregularity likely made the notice of default "void ab initio."  *Scoba*, 2010 WL 3986953, at *2.

Faced with similar facts, other courts have diverged from *Castillo* in declining to find that the effect of an irregularity in the notice of default is to void not only that document but also any subsequent notice of trustee sale or actual sale.  In *Perry v. National Default Servicing Corporation*, the Court rejected plaintiff's argument that a nearly identical timing defect in a Notice of Default could render the ultimate foreclosure sale void.  No. 10-3167, 2010 WL 3325623, at *3 (N.D. Cal. Aug. 20, 2010).  "The primary purpose of a notice of default," the court reasoned, "is to provide notice of the amount in arrears."  *Id.*  The court continued: "Courts have rejected claims of deficient

United States District Court
For the Northern District of California

1    notice where no prejudice was suffered as the result of a procedural irregularity." *Id.* (*quoting*

2    *Pantoja v. Country Wide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1186-87 (N.D. Cal. 2009)

3    (rejecting claim that a notice of default signed by alleged non-beneficiary entitled borrower to relief

4    from foreclosure, when borrower failed to allege prejudice)).  The *Perry* court concluded that, "[i]n

5    order for a defect in the notice of default to be material, it must cause prejudice." *Id.* (*citing Knapp*

6    *v. Doherty*, 123 Cal. App. 4th 76, 99 (2004)).  Where plaintiffs received the notice of default and

7    could not articulate what prejudice arose from the "asserted problem with [an entity's] capacity to

8    sign" it, the court found no basis to void a sale.  *Id.* ("There is no basis for relief from non-

9    prejudicial irregularities in a default notice.").

10        A mode of analysis that focuses on prejudice is particularly useful here, where plaintiff has

11   relied on the negligence per se doctrine to frame his claim.  As explained above, Lawther must

12   allege that a statutory violation "proximately caused death or injury to a person or property."  It is

13   true that filing a Notice of Default sets in motion a timetable ultimately culminating in foreclosure

14   sale.  It strains reason, however, to argue—as Lawther appears to do—that the eleven-day timing

15   discrepancy *caused* his foreclosure, indebtedness, or credit problems, particularly as the foreclosure

16   sale has not yet taken place.  If he was prejudiced by the discrepancy, it is his obligation to so allege.

17        Finally, Lawther's alternative argument that, in any event, MERS lacked authority to execute

18   the substitution of trustee is without merit.  California Civil Code Section 2934a(a)(1)(A) provides

19   that a trustee under a deed of trust may be substituted via a recorded substitution executed by any

20   beneficiary under the deed of trust.  Lawther's Deed of Trust named MERS as beneficiary.  Courts

21   in this Circuit have repeatedly recognized that MERS, as a named nominal beneficiary to a Deed of

22   Trust, has the power to make assignments and substitutions under California's statutory foreclosure

23   scheme.  *See, e.g.*, *Lane v. Vitek Real Estate Indus. Group*, 713 F. Supp. 2d 1092, 1099 (E.D. Cal.

24   2010); *Ramirez v. SCME Mortg. Bankers, Inc.*, No. 09-1931, 2010 WL 2839476, at *3 (S.D. Cal.

25   July 19, 2010).  Lawther provides no persuasive authority to advance his theory and his negligence

26   claim therefore must be dismissed, with leave to amend if he can do so consistent with the factors

27   set forth above.

28

**United States District Court**
For the Northern District of California

B.   RESPA

In his second claim for relief, Lawther alleges that Onewest violated the RESPA statute when it failed to respond adequately to his Qualified Written Request ("QWR").  Section 2605, on which Lawther relies, provides that "[i]f any servicer of a federally related mortgage loan receives a [QWR] from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days . . . unless the action requested is taken within such period."  12 U.S.C. § 2605(e)(1)(A).  "Not all requests that relate to the loan are related to the servicing of the loan." *Williams v. Wells Fargo*, No. 10-0399, 2010 WL 1463521, at *3 (N.D. Cal. Apr. 13, 2010).  "A loan servicer only has a duty to respond if the information request is related to loan servicing." *Copeland v. Lehman Bros. Bank, FSB*, No. 09-1774, 2010 WL 2817173, at *3 (S.D. Cal. July 15, 2010).  "If a loan servicer fails to comply with the provisions of [section] 2605, a borrower shall be entitled to 'any actual damages to the borrower as a result of the failure' and 'any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of [section 2605.'"  *Id.* (*citing* 12 U.S.C. § 2605(f)(1)(B)).

While Onewest did respond to Lawther's QWR, Lawther characterizes it as a "blanket denial" of his request for information or documents without some form of payment.  Lawther argues Onewest was obligated to respond—without payment—to his QWR and suggests the company's failure in his case is possibly indicative of its treatment of other borrowers.  Accordingly, Lawther claims he is entitled to both actual damages and statutory damages stemming from the alleged "pattern or practice" of violating RESPA's terms.

In the Prior Order granting defendants' first motion to dismiss, the previously assigned judge considered and rejected Lawther's RESPA claim, finding that he failed to allege either actual damages or a pattern or practice of noncompliance.  As to actual damages, the Court, siding with numerous decisions in this Circuit, held that Lawther needed to demonstrate some pecuniary loss. *See e.g.*, *Amaral v. Wachovia Mortg. Corp.*, 692 F. Supp. 2d 1226, 1232 (E.D. Cal. 2010) (dismissing RESPA claim where Plaintiff's damages allegation did not amount to a factual

No. C 10-0054 RS
ORDER

9

allegation, only a conclusory statement of law); *Garcia v. Wachovia Mortg. Corp.*, 676 F. Supp. 2d 895, 909 (C.D. Cal. 2009) (same).  "This pleading requirement," the Prior Order emphasized, "has the effect of limiting the cause of action to circumstances in which plaintiffs can show that a failure of notice has caused them actual harm."  Prior Order, at *6-7 (*citing Allen v. United Fin. Mortg. Corp.*, 660 F. Supp. 2d 1089, 1097 (N.D. Cal. 2009)).  The Prior Order rejected Lawther's claim that he suffered the costs of the instant suit and, without access to the information requested in the QWR, was "unable to plead a complete case," as insufficient to recover actual damages.  In his SAC, Lawther has added that he and his family suffered extreme emotional angst as a result of the foreclosure process.

Courts in the Ninth Circuit have interpreted the pecuniary loss requirement liberally; several have considered an averment of emotional harm sufficient to recover actual damages under RESPA. *See, e.g.*, *Apodaca v. HSBC Bank USA*, No. 10-0307, 2010 WL 1734 945, at *3-4 (S.D. Cal. Apr. 7, 2010).  What remains unexplained, however, is how the QWR failure itself is causally connected to the claimed distress of Lawther or his family.  It is the plaintiff's pleading obligation to "point to some colorable relationship between his injury and the actions or omissions that allegedly violated RESPA."  *Allen v. United Fin. Mortg. Corp.*, No. 09-2507, 2010 WL 1135787, at *5 (N.D. Cal. March 22, 2010) (dismissing RESPA claim where plaintiff alleged "actual damages" including falling behind on mortgage payments, negative credit impact, and emotional distress, but failed to allege any causal relationship between the damages and the RESPA violations).  Arguably, a failure to respond to a QWR could contribute to the emotional distress of foreclosure where the information sought would have identified the party with the authority to modify the loan's terms.  The facts supplied elsewhere in Lawther's SAC, however, provide that Lawther *did* know it was Onewest who had this authority.  Lawther did attempt, although unsuccessfully, to modify his loan with Onewest nearly a year before his attorney sent the QWR.  Worse, Lawther sent the QWR months *after* issuance of the Notice of Default and Notice of Trustee Sale or, in other words, after events directly connected to the emotional harm he alleges.  Accordingly, Lawther has not pleaded actual harm causally connected to the alleged RESPA violation.

As to statutory damages, Lawther has added to the SAC his theory that, if Onewest failed to respond to his QWR, this Court should accept that it treated other borrowers identically. Courts have ascribed to the term "pattern or practice" as it appears in the RESPA statute its ordinary meaning. *See, e.g., Joern v. Ocwen Loan Serv.*, No. 10-0134, 2010 WL 3516907, at *3 (E.D. Wash. Sept. 2, 2010) ("The term suggests a standard or routine way of operating."). Although courts routinely refuse to find a pattern or practice where a plaintiff alleges only a single QWR refusal, others have accepted that as few as three refusals is sufficient. Lawther has alleged that a single refusal occurred in his case and asks the Court to intuit others. He presents no authority, however, to support his argument that a plaintiff can recover statutory damages where the alleged "pattern or practice" involves harm to *other* borrowers. Even assuming there is such authority, Lawther must at least allege more than he has here, which is merely that such other borrowers *could* exist. Accordingly, Lawther's RESPA claim for both actual and statutory damages must be dismissed with leave to amend.

C. Breach of Contract / Promissory Estoppel

Defendants also move to dismiss Lawther's breach of contract claim. Lawther claims that at some point in February of 2009, Onewest made an oral promise to modify the terms of his mortgage agreement. In the Prior Order, the Court cited to California Civil Code section 1689, which provides that a written contract may be modified only in writing, by an oral agreement executed by the parties, or by an oral agreement supported by new consideration. The Court then held that Lawther failed to allege that the purported oral modification met any of these requirements. In particular, the Prior Order explained that, "if there exists sufficient consideration for an oral modification agreement, then full performance by the promisee alone would suffice to render the agreement 'executed' within the meaning of section 1698." Prior Order at *10-11 (*citing Raedeke v. Gibraltar Sav. & Loan Ass'n*, 10 Cal. 3d 665, 673 (1974)). The Court then emphasized that Lawther's reduced monthly payments could not constitute consideration, as he was already required to make such payments under the terms of his original loan agreement. Finding no other evidence of new consideration, the Prior Order dismissed Lawther's breach claim.

United States District Court
For the Northern District of California

1    In response to the Prior Order, Lawther has again argued breach of the purported oral

2    agreement, but this time relies on the doctrine of promissory estoppel.  That doctrine "make[s] a

3    promise binding under certain circumstances, without consideration in the usual sense of something

4    bargained for and given in exchange." *Youngman v. Nevada Irrigation Dist.*, 70 Cal. 2d 240, 249

5    (1969).  *See also Wade v. Markell & Co.*, 118 Cal. App. 2d 410, 421 (1953) ("[W]hile it is settled in

6    view of section 1698 of the Civil Code which provides that a written contract may be altered by a

7    contract in writing, or by an executed oral agreement but not otherwise, nevertheless, it is also true

8    that the facts of a particular case may give rise to an . . . estoppel against the party who denies the

9    verbal modification.").  The equitable doctrine requires: (1) a promise that is clear and

10   unambiguous; (2) actual reliance by the party to whom the promise is made; (3) reasonable and

11   foreseeable reliance; and (4) injury to the party asserting estoppel connected to his or her reliance.

12   *Ecology, Inc. v. California*, 129 Cal. App. 4th 887, 901-02 (2005).  "The vital principle is that he

13   who by his language or conduct leads another to do what he would not otherwise have done shall

14   not subject such person to loss or injury by disappointing the expectations upon which he acted."

15   *Wilson v. Bailey*, 8 Cal. 2d 416, 423 (1937) (citations omitted).  Moreover, the availability of a

16   promissory estoppel claim is generally a question of fact.  *State of California v. Haslett Co.*, 45 Cal.

17   App. 3d 252, 256 (1975).

18   Lawther argues he entered into a temporary forebearance agreement with Onewest in

19   February of 2009.  Under its terms, he was allowed to pay a reduced monthly rate in exchange for

20   his promise to pay a balloon payment in the event of default.  Lawther made each payment.  He also

21   explains that it was his understanding that he would be allowed to continue the reduced monthly rate

22   on a permanent basis, so long as he withstood the three-month trial period.  He claims he did not

23   search for a seller, make any other effort to extricate himself from his mortgage, or seek a loan from

24   another lender in reliance on the expected modification.  He asserts that his conduct was a

25

26

27

28
                                                                    No. C 10-0054 RS
                                                                    ORDER

United States District Court

For the Northern District of California

1   reasonable and foreseeable consequence of the lender's promise.  These allegations are sufficient to

2   survive a motion to dismiss.[3]

3       D.  Breach of the Implied Covenant of Good Faith and Fair Dealing

4       "There is implied in every contract a covenant by each party not to do anything which will

5   deprive the other parties thereto of the benefits of the contract."  *Harm v. Frasher*, 181 Cal. App. 2d

6   405, 417 (1960).  A "breach of a specific provision of the contract is not a necessary prerequisite" to

7   establishing a breach of the implied covenant of good faith and fair dealing.  *Carma Dev. (Cal.),*

8   *Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 373 (1992).  "The implied covenant will not apply

9   where no express term exists on which to hinge an implied duty, and where there has been

10  compliance with the contract's express terms."  *Berger v. Home Depot U.S.A., Inc.*, 476 F. Supp. 2d

11  1174, 1177 (C.D. Cal. 2007).

12      Lawther tethers his implied covenant claim to the original Deed of Trust, the Promissory

13  Note and the alleged oral modification agreement.  Specifically, Lawther argues Onewest breached

14  its good faith obligation by failing to modify Lawther's loan as (allegedly) promised and by

15  violating civil code sections 2934(a)(d) and 2924.  In this sense, his breach of the implied covenant

16  claim focuses on the same behavior targeted in his breach of contract and negligence per se claims.

17  If it is true that Lawther and Onewest entered into an enforceable oral contract, he may have a

18  colorable implied breach claim.  To the extent Lawther argues Onewest's failure to modify his loan

19  obligation breached the covenant implied in his original loan agreements, the Prior Order rejected

20  this argument.  Prior Order, at *12.  The express terms of the original loan documents supplied

21  Lawther's lender with the contractual right to foreclose upon the property in the event of default and

22

23  [3] In its reply brief, Onewest for the first time makes the argument that it was the FDIC, and not
    Onewest, who made the alleged modification promise.  Accordingly, it asserts that the Financial
24  Institutions Reform, Recovery and Enforcement Action of 1989, 12 U.S.C. § 1821(d), provides that
    Lawther cannot bring a civil claim in district court without first exhausting the administrative
25  remedies provided for under that statutory scheme.  In fairness to Lawther, this Court will not
    consider an argument made in a reply brief.  Moreover, the Court would be required to make several
26  factual findings—including interpretations of the terms and provisions in the purchase agreement
    between the FDIC and Onewest—that plainly exceed the scope of a motion to dismiss.  Should
27  Onewest wish to pursue this argument any further, it must do so in the context of a motion for
    summary judgment.
28
                                                                          No. C 10-0054 RS
                                                                          ORDER

United States District Court

For the Northern District of California

1 imposed no absolute duty to modify the loan. Accordingly, where the defendants acted consistent

2 with the express terms of their contractual agreements, they could not have breached their implied

3 covenants of good faith and fair dealing.

4       Lawther points to no authority in support of his claim that the Court may infer a breach of a

5 covenant implied in a *contract* from the violation of a statute's terms. As one California appellate

6 court reasoned, "the covenant of good faith and fair dealing is, by definition, an implied contract

7 term. It has no relation to any statutory duties which may exist." *Smith v. City & County of San*

8 *Francisco*, 225 Cal. App. 3d 38, 49 (1990). *See also Acosta v. Wells Fargo Bank, N.A.*, No. 10-

9 0991, 2010 WL 2077209, at *5 (N.D. Cal. May 21, 2010) (rejecting argument that violation of

10 California's wrongful foreclosure statutes demonstrated breach of the covenant implied in loan

11 agreements). Lawther's claim therefore must be dismissed as pleaded with leave to amend, to the

12 extent he alleges a breach of the covenant of good faith implied in the alleged oral modification

13 agreement.

14     E. California's Unfair Competition Law

15       The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair,

16 deceptive, untrue or misleading advertising." Cal. Civ.Code § 17200. Accordingly, "[a]n act can be

17 alleged to violate any or all of the three prongs of the UCL—unlawful, unfair, or fraudulent."

18 *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007). Lawther relies only on

19 the "unlawful" prong. This prong borrows violations from other laws and treats them as unlawful

20 practices that are independently actionable. *Wang v. Massey Chevrolet*, 97 Cal. App. 4th 856, 871

21 (2002). Insofar as Lawther relies on claims found to be defective as explained above, his UCL

22 "unlawful" claim must fail. [4]

23                           V.  CONCLUSION

24

25

---

26 [4] The Prior Order also raised concern over whether Lawther had alleged standing to pursue this claim for relief. In the SAC, Lawther has clarified that it is his belief that, but for its breach of its

27 modification promise, Onewest would not have needed to foreclose on his home, he has adequately alleged that he has standing to bring his UCL claim.

28

As detailed above, defendants' motion to dismiss Lawther's negligence per se and RESPA claim is granted, with leave to amend.  Defendants' motion must be denied insofar as it is directed at Lawther's breach of contract claim.  Lawther's breach of the implied covenant of good faith and fair dealing and UCL claims are defective and subject to dismissal with leave to amend, to the extent they can be linked to any viable claim.  In the event that Lawther elects to amend his Complaint, he must do so by **January 13, 2011**.  The Case Management Conference is continued to **March 3, 2010 at 10:00 a.m.**  The parties shall submit a Joint Case Management Conference at least one week prior to the Conference.

IT IS SO ORDERED.

Dated: 11/30/2010

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

No. C 10-0054 RS
ORDER