UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN L. LAWTHER,

   Plaintiff,

 v.

ONEWEST BANK, FSB, et al.,

   Defendants.
_____/

No. C-10-00054 JCS

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT
[Docket No. 71]**

**I. INTRODUCTION**

 Plaintiff John L. Lawther commenced this action on January 6, 2010, challenging the initiation of foreclosure proceedings of the property located at 5991 Sky Farm Drive, Castro Valley, California. Defendants OneWest Bank, FSB ("OneWest") and Mortgage Electronic Registration System ("MERS"), joined by Aztec Foreclosure Corporation ("Aztec"), now bring a Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment ("the Motion") on Plaintiff's Third Amended Complaint ("TAC"). A hearing on the Motion was held on Friday, January 27, 2012 at 9:30 a.m. For the reasons stated below, the Motion is GRANTED.[1]

**II. REQUEST FOR JUDICIAL NOTICE**

 Defendants request that the Court take judicial notice of four documents that are matters of public record and/or directly referenced in Plaintiff's complaint. Request for Judicial Notice in Support of Defendants' Motion for Summary Judgment, 2-3. Plaintiff has not objected to

---

 [1] The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

**United States District Court**
For the Northern District of California

Defendants' request or challenged the authenticity of any of the attached documents. Accordingly, the Court takes judicial notice of these records pursuant to Rule 201 of the Federal Rules of Evidence.

Plaintiff, however, objects to two other pieces of Defendants' evidence relied upon in the Motion. First, Plaintiff objects to the Declaration of Tiffany M. Birkett, Esq. on the grounds that Plaintiff's Third Amended Complaint is improperly attached as an exhibit. Second, Plaintiff argues that the Declaration of Charles Boyle impermissibly references a Federal Deposit Insurance Corporation ("FDIC") press release located on that agency's website.

The standard for judicial notice is set forth in Rule 201 of the Federal Rules of Evidence, which allows a court to take judicial notice of a fact not subject to "reasonable dispute," either because it is "generally known within the territorial jurisdiction of the trial court" or it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The court "may take judicial notice of filings and other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). Additionally, courts may take judicial notice of documents referenced in the complaint. *Dreiling v. Am. Express Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006); *Shurkin v. Golden State Vintners, Inc.*, 2005 WL 1926620, at *7 (N.D. Cal. Aug. 10, 2005) ("Exhibit F . . . is explicitly referenced in Plaintiff's Complaint, and should, therefore, be judicially noticed.").

Plaintiff's objection to the attachment of the TAC is without merit as the TAC is a public filing. Although the Court does not rely on the FDIC press release, and therefore need not reach Plaintiff's objection, the Court notes that the document is publically available on the FDIC's website and is not subject to reasonable dispute.

**III.      BACKGROUND**

      **A.      Factual Background**

On January 6, 2006, with the assistance of a mortgage brokerage company named CGM and agent Monica Espinoza, Plaintiff refinanced his home mortgage loan in the amount of $599,000.

United States District Court
For the Northern District of California

Joint Statement of Undisputed Facts ("Joint Statement") at ¶ 1;[2] Ex. 1 (Fixed/Adjustable Rate Note) ("Note").  The Note was secured by a Deed of Trust on property located at 5991 Skyfarm Drive, Castro Valley, California.  Ex. 2 (Deed of Trust).  The Deed of Trust designates IndyMac Bank, F.S.B. ("IMB") as the lender with MERS as the nominee beneficiary.  *Id.*; Joint Statement  at ¶ 2. The Deed of Trust explicitly grants MERS the power, as the lender's nominee, to exercise the interests of the lender and the lender's assignees as beneficiary relative to the Deed of Trust.  *Id.* at ¶ 22; Joint Statement at ¶4.  On or about July 11, 2008, IMB was closed by the Office of Thrift Supervision and the Federal Deposit Insurance Corporation ("FDIC") was named Conservator of the failed bank.  Joint Statement at ¶ 8.  The FDIC transferred substantially all of IMB's assets, including the servicing rights to the subject Note and Deed of Trust, to IndyMac Federal Bank, F.S.B. ("IMFB").  *Id.*  Plaintiff admits that in September 2008, Plaintiff defaulted on his loan due to financial hardship.  Plaintiff's Third Amended Complaint ("TAC"), ¶ 18.

Sometime in late 2008 or early 2009, Plaintiff and IMFB entered into a loan repayment plan. *Id.* at ¶ 19.[3]  Plaintiff alleges that the agreement was for a permanent loan modification, whose terms included: 1) monthly payment of $3,243.68; 2) monthly amount was to be paid for three months; 3) upon completion of the payments, "OneWest promised to modify Plaintiff's loan"; and 4) a $25,000 balloon payment was required to be paid on the fourth month if any payments were missed.  *Id.* at ¶¶

---

[2]  Pursuant to the Court's standing orders, the parties submitted a Joint Statement of Undisputed Facts.  The parties' statement, however, improperly contained many facts that are in dispute.  *See* Civil Standing Orders for Magistrate Judge Joseph C. Spero, ¶ 17 (Nov. 15, 2010), http://www.cand.uscourts.gov/jcsorders (follow "Mag Judge Spero's Standing Order" hyperlink) ("Motions for summary judgment shall be accompanied by a joint statement of the material facts not in dispute by citations to admissible evidence.  The parties shall file a joint statement of undisputed facts.  If the parties are unable to reach complete agreement after meeting and conferring, they shall file a joint statement of the undisputed facts about which they do agree.").  Accordingly, the Court will consider only those facts in the statement that are actually undisputed.

[3]  Plaintiff asserts in the Joint Statement that Plaintiff did not enter into any agreement until around June 2009.  Joint Statement at ¶ 6.  Plaintiff presents multiple pieces of evidence to support this assertion, including conflicting deposition testimony as to when the agreement occurred.  *See* Ex. K (Lawther Deposition), 54 (stating agreement occurred in "December of 2008, possibly January of 2009"); *Id.* at 59 (asserting agreement occurred in "June of 2009").  Plaintiff's bank records that purport to show payments made pursuant to the agreement, include payments made only before June 2009.  Ex. L (Modification Loan Payments).  The June 2009 date also contradicts statements made in earlier filings with the Court, including the TAC.  *See* TAC at ¶ 19 ("OneWest offered Plaintiff a special forbearance plan around February 2009.").  Therefore, Plaintiff's evidence only shows that the agreement occurred in late 2008 or early 2009, if it occurred at all.

United States District Court

For the Northern District of California

19-20.  Defendants, however, disagree that the modification was permanent, and that the payments were required for only three months; rather, Defendants contend that the agreement was merely a temporary forbearance plan to postpone the impending foreclosure and adjust payments for five months: February, March, April, May, and June 2009.  Defendants' Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment ("Motion"), ¶ 3.  According to Defendants, the forbearance plan expired on its own terms at the end of June 2009, and did not provide for a permanent loan modification.  *Id.*  Defendants are silent as to whether the plan included a balloon payment.  Plaintiff claims he made three payments for the months of March, April, and May 2009. TAC at ¶ 20; Ex. L (Modification Loan Payments).  Defendants state that Plaintiff missed the alleged June 2009 payment, implying that Plaintiff made payments for February, March, April, and May 2009.  Motion at 3.

By virtue of the Master Purchase Agreement dated March 18, 2009, and the Servicing Business Asset Purchase Agreement dated March 19, 2009, OneWest acquired from IMFB the mortgage servicing rights to the Note, Deed of Trust, and the Loan, among other things.  Joint Statement at ¶ 10; Ex. 4 (Master Purchase Agreement); Ex. 5 (Servicing Business Asset Purchase Agreement).  As the servicer, OneWest has the authority to hold the original Note and Deed of Trust and to direct foreclosure proceedings.  *Id.*  There is no evidence that OneWest succeeded to the liabilities of IMB.

On July 17, 2009, a Notice of Default ("NOD") was recorded in Alameda County.  Ex. 3 (Notice of Default).  Defendant Aztec, as trustee, executed the NOD on July 16, 2009, which stated that Plaintiff is $36,442.54 in arrears.  *Id.*

Eleven days later, on July 27, 2009, MERS, as nominee for OneWest, executed a Substitution of Trustee, substituting Aztec as the new trustee in place of Fidelity National Title Insurance Company.  Joint Statement at ¶ 11; Ex. 6 (Substitution of Trustee).  The Substitution of Trustee was not recorded until October 20, 2009.  *Id.*  A Notice of Trustee's Sale pursuant to the Deed of Trust was also recorded on October 20, 2009.  Joint Statement at ¶ 12; Ex. 7 (Notice of Trustee's Sale).  On or about November 9, 2009, Plaintiff notified OneWest via facsimile that

United States District Court

For the Northern District of California

Plaintiff filed for bankruptcy on November 7, 2009.  Joint Statement at ¶ 13; Ex. 8 (Bankruptcy Correspondence).

On or about November 11, 2009, Plaintiff, through his attorney, sent OneWest a letter purporting to be a Qualified Written Request ("QWR"), pursuant to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e).  Ex. M (Qualified Written Request).  OneWest sent a reply letter concerning the purported QWR to Plaintiff's attorney on or about January 25, 2010.  Ex. 9 (Response to Plaintiff's Written Request).

Plaintiff initiated this action on January 6, 2010.  In Plaintiff's TAC, filed on January 13, 2011, he asserts the following claims:

(1) **Negligence Per Se:** Plaintiff alleges that all Defendants violated  Cal. Civ. Code Sections 2924 and 2934a during the initiation of foreclosure proceedings against Plaintiff.  TAC at ¶ 31-34.  Plaintiff claims that Section 2924 was violated because when Aztec recorded the NOD on July 17, 2009 Aztec had not been substituted as trustee.  *Id.* at ¶ 33.  Only OneWest, MERS, and Fidelity National Title Insurance Company had the authority to record the NOD on that date, Plaintiff alleges.  *Id.*  Plaintiff claims he was injured by the alleged violation "since it caused the foreclosure process to proceed forward prematurely, thus increasing the momentum toward foreclosure and resulting in a heightened level of anxiety and emotional well-being for Plaintiff and his entire family."  *Id.* at ¶ 35.  Plaintiff also claims that he "has suffered damage to his consumer credit history and home mortgage creditworthiness with resulting financial loss."  *Id.* at ¶ 37.

(2) **Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 *et seq.*:** Plaintiff asserts this claim against OneWest and Does 2-100.  *Id.* at 10.  Plaintiff claims that he sent OneWest a QWR on November 11, 2009, which regarded "the crediting of payments on his mortgage account and asking for an accounting, as well as a demand for a copy of the Note with any modifications or assignments, identification of the owner and holder of the Note and mortgage, and a beneficiary statement, among other items."  *Id.* at ¶ 40.  Plaintiff further claims that in the letter he "specified that he disputed the amount owed, the accounting of fees and costs, and did not believe ownership and securitization of his loan was ever disclosed or recorded."  *Id.* at ¶ 42.  Defendants violated RESPA, Plaintiff claims, "by failing to respond to the questions posed in Plaintiff's QWR to date

and instead provided Plaintiff with a general denial letter and order form listing the documents Plaintiff is allowed to request and the amounts he would be charged for requesting them." *Id.* at ¶ 42.

Plaintiff claims he has suffered actual damages "since his requests for modification have not been properly addressed to the investors of Plaintiff's Note who are the real parties in interest with the authority to modify Plaintiff's loan. Such failure has led to the initiation of foreclosure proceedings against Plaintiff which has cost him actual severe emotional distress on a daily basis." *Id.* at ¶ 43. Additionally, Plaintiff claims that Defendants' failure to respond "is causally connected to his claimed distress as he remains unclear as to how, who and to what extent others are involved in the servicing of his loan. Knowing this information could lead to an amicable resolve and resolution to his claims [by] directing his interests to the parties with full authority to make a solid determination as to the restructuring of his loan." *Id.* at ¶ 44.

Plaintiff further claims that "Defendants also violated RESPA by continuing its collection efforts and foreclosure proceedings after receiving Plaintiff's QWR and then reporting this activity to credit reporting agencies," resulting in "severely damaged credit." *Id.* at ¶ 46. Plaintiff seeks actual and statutory damages and asserts that "the court can rightfully presume that if OneWest immediately responded to Plaintiff's request with an [sic] non-compliant letter and demand for fees, they have certainly repeated the same conduct for other plaintiffs." *Id.* at ¶ 47-48.

(3) **Promissory Estoppel:** Plaintiff asserts this claim against OneWest and Does 2-100. *Id.* at 12. Plaintiff claims that OneWest broke its promise to modify his loan permanently if he made loan payments for three months. *Id.* at ¶¶ 50, 52. Plaintiff claims he relied on this promise in making loan payments for March, April, and May of 2009. *Id.* at ¶ 51. Plaintiff further claims that the breach caused "substantial injury" and led to the "imminent threat of foreclosure." *Id.* at ¶ 53.

(4) **Breach of the Implied Covenant of Good Faith and Fair Dealing:** Plaintiff asserts his fourth claim against OneWest, Aztec, and Does 2-100. *Id.* at 14. Plaintiff claims that OneWest and its agents violated the implied covenant when Monica Espinoza and CGM "knowingly inserted a stated income amount on Plaintiff's loan application in order to qualify Plaintiff for the loan without regard to his actual income, which was far below that stated." *Id.* at ¶ 59. Plaintiff further alleges

1   that Defendants breached the implied covenant by failing to comply with the oral modification

2   agreement and Cal. Civ. Code Sections 2934a(d) and 2924 prior to initiating foreclosure

3   proceedings.  *Id.* at ¶ 60.

4         Plaintiff goes on to claim that, based upon OneWest's promise to modify his loan

5   permanently, he "did not attempt to sell his home or relocate his family, options that are obsolete to

6   him now that his credit is completely ruined. . . . In spring of 2009, Plaintiffs [sic] alternative options

7   to OneWest's modification offer were greater than they are now.  At this time, Plaintiff has no other

8   options to housing his family; his credit had been ruined by MERS' invalid initiation of foreclosure

9   and the subsequent credit reportings made by Defendants."  *Id.* at ¶ 61.

10         (5) **Unlawful Business Practices Under Cal. Bus. & Prof. Code §§ 17200** *et seq.***:**  Plaintiff

11   claims that "by violating [Cal. Civ. Code] Sections 2934a(d) and 2924[,] OneWest, MERS and

12   [Aztec] have committed one or more acts of unlawful business practices within the meaning of

13   California Business and Professions Code §§ 17200 *et seq.*"  *Id.* at ¶ 64.  "These unlawful business

14   practices include . . . breach of the oral loan modification agreement, [and] violations of

15   RESPA through failure to respond to Plaintiff's QWR."  *Id.* at ¶ 66.  Plaintiff claims that the

16   unlawful business practices related to the RESPA violation "prevent[] Plaintiff from discovering the

17   true facts regarding his loan until his Property is forever lost to foreclosure."  *Id.* at ¶ 67.  Plaintiff

18   further claims that "[e]ach of these unlawful business practices has caused Plaintiff substantial

19   financial harm by preventing him from receiving a permanent loan modification which has resulted

20   in an amount in arrears on [his loan] . . . ."  *Id.* at ¶ 67.  Plaintiff asserts that he "stands to lose his

21   home altogether while in a worse condition with his finances and credit than he was when the

22   permanent modification was offered by OneWest in Spring of 2009."  *Id.*  Finally, Plaintiff claims

23   that he "will suffer an irreparable injury not compensable in damages if the ultimate object of

24   Defendants' conspiracy—the wrongful foreclosure of Plaintiff's property—is permitted to take

25   place."  *Id.*

26         Plaintiff seeks statutory and compensatory damages, attorney's fees, and all such relief to

27   Plaintiff as he may be entitled, including injunctive relief.  *Id.* at 17.

28

**United States District Court**
For the Northern District of California

1    **B.      The Motion**

2          Defendants argue in the Motion that all of the claims alleged in Plaintiff's TAC fail as a

3    matter of law for the reasons stated below.[4]

4          <u>Negligence Per Se</u>:  Defendants argue that Plaintiff's negligence per se claim fails for two

5    reasons.  Motion at 7-12.  First, Defendants contend that they fully complied with Cal. Civ. Code

6    Sections 2924 and 2934a in initiating foreclosure proceedings and thus no statutory violation

7    occurred.  *Id.* at 8.  Specifically, Defendants reject Plaintiff's claim that Aztec lacked authority to

8    commence foreclosure proceedings by executing and recording the NOD prior to the Substitution of

9    Trustee.  *Id.*  Defendants assert that at the time of the filing of the NOD, Aztec, if not the substituted

10   trustee, was acting as the agent of MERS, the beneficiary, and thus in compliance with Sections

11   2924 and 2934a.  *Id.* at 9-10 (citing Ex. 2 (Deed of Trust), ¶ 22; Declaration of Charles Boyle in

12   Support of Defendants' Motion for Summary Judgment or, in the Alternative, Summary

13   Adjudication ("Boyle Decl."), ¶ 4; Declaration of JC San Pedro in Support of Defendants' Motion

14   for Summary Judgment or, in the Alternative, Summary Adjudication ("Pedro Decl."), ¶ 5).

15         Second, Plaintiff has failed, Defendants contend, to produce any evidence that he suffered

16   damages as the result of the alleged statutory violations.  *Id.* at 11-12 (citing Cal. Evid. Code § 669;

17   *Alejo v. City of Alhambra*, 75 Cal. App. 4th 1180, 1185 (1999); *Galvez v. Frields*, 88 Cal. App. 4th

18   1410, 1420-21 (2001)).  Defendants assert that Plaintiff has failed to provide evidence that

19   Defendants' actions ruined his credit score; indeed, Plaintiff has not produced evidence of his credit

20   score at all.  *Id.* at 12.  Defendants also appear to argue that it was Plaintiff's failure to make the

21   final payment under the repayment plan that caused the initiation of foreclosure proceedings, rather

22   than Defendants' alleged behavior.  *Id.* at 12.

23         <u>Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 *et seq.*</u>: Defendants assert that

24   Plaintiff's RESPA claim, alleging a failure to respond to his Qualified Written Request ("QWR"),

25

26         [4]  The Defendants also take issue with the sufficiency of Plaintiff's discovery responses.  The
     Court reminds both parties that, before the Court will address the sufficiencies of a discovery response,
     a motion or letter brief must be filed pursuant to the Federal Rules of Civil Procedure and the Standing
27   Orders of this Court.  Accordingly, the Court will not address the parties' discovery dispute.  Moreover,
     the Court finds Defendants' objections to Plaintiff's discovery response  immaterial to the outcome of
28   Defendants' summary judgment motion.

United States District Court

For the Northern District of California

fails for two reasons. *Id.* at 12-13. First, Plaintiff's alleged QWR failed to state Plaintiff's reasons for believing the account was in error, and thus "no substantive response was required." *Id.* at 13 (citing 12 U.S.C. § 2605(e)(1)(A)). Second, even assuming the existence of a valid QWR, Defendants argue that Plaintiff has failed to produce evidence of pecuniary damages arising out of the violation as required under RESPA. *Id.* (citing *Fullmer v. JPMorgan Chase Bank, NA*, 2010 WL 95206, at *6 (E.D. Cal. Jan. 26, 2010)).

Promissory Estoppel: Defendants state three reasons why Plaintiff's promissory estoppel claim fails. *Id.* at 15. First, "Plaintiff cannot and does not establish a promise to permanently modify the loan." *Id.* (citing Boyle Decl. at ¶ 9). Second, Defendants appear to argue that because Plaintiff has failed to provide evidence that any oral forbearance agreement involved new consideration, his promissory estoppel claim is inadequate as a matter of law. *Id.* (citing *Raedeke v. Gibraltar Sav. & Loan Ass'n.*, 10 Cal. 3d 665, 673-74 (1974)). Third, Defendants seemingly argue that Plaintiff has failed to show detrimental reliance and "unconscionable injury," as required under promissory estoppel. *Id.* (citing *Allied Grape Growers v. Bronco Wine Co.*, 203 Cal. App. 3d 432, 444 (1988)). Defendants state the promissory estoppel claim "is clearly without merit since it is undisputed that Plaintiff remained in default after he was provided the repayment plan and failed to make the last payment in June 2009." *Id.*

Breach of Implied Covenant of Good Faith and Fair Dealing: Defendants argue that Plaintiff is unable to assert a claim based on a breach of the implied covenant since Plaintiff cannot establish that the loan modification plan was an enforceable contract. *Id.* at 16 (citing *Smith v. City and County of San Francisco*, 225 Cal. App. 3d 38, 49 (1990)). Defendants also note that they have at all times acted in good faith "as beneficiary under the Note and the Deed of Trust and in commencing and proceeding with the foreclosure process." *Id.* at 17.

Unlawful Business Practices Under Cal. Bus. & Prof. Code §§ 17200 *et seq.*: Defendants argue that Plaintiff's § 17200 claim based on unlawful business practices fails for three reasons. *Id.* at 17-18. First, Plaintiff's claim is preempted by the Home Owners Loan Act ("HOLA"), Defendants contend, citing to cases for the proposition that HOLA preempts state law claims based on loan related fees or lender's disclosure obligations. *Id.* at 17 (citing *Reed v. Wells Fargo Bank*,

**United States District Court**
For the Northern District of California

1   2011 WL 1793340, *4 (N.D. Cal. May 11, 2011); *Silvas v. E\*Trade Mortgage Corp.*, 514 F.3d

2   1001, 1005-06 (9th Cir. 2008)).  Second, Plaintiff fails to prove that he suffered any "actual injury"

3   relative to the wrongful foreclosure or RESPA violation, and therefore Plaintiff lacks standing to

4   bring his claim.  *Id.* at 18.  Defendants also assert that "[a]llegations of impending harm are

5   insufficient to plead an injury in fact for purposes of § 17200."  *Id.* (citing *Peterson v. Cellco P'ship*,

6   164 Cal. App. 4th 1583, 1591 (2008); *Animal Legend Def. Fund v. Mendes*, 160 Cal. App. 4th 136

7   (2008)).  Third, even if Plaintiff's claim is not preempted and he does have standing, Plaintiff is

8   unable to establish any predicate unlawful act to serve as the basis for his claim.  *Id.* (citing *Khoury*

9   *v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612 (1993); *Ledesma v. FMC Corp.*, 2010 WL 744556, at

10  *6 (S.D. Cal. Mar. 3, 2010)).

11      **C.      The Opposition**

12      In opposition to Defendants' arguments regarding the specific claims asserted in Plaintiff's

13  TAC, Plaintiff responds as follows.[5]

14      <u>Negligence Per Se</u>: Plaintiff asserts that Defendant Aztec did not have the authority to record

15  the NOD on July 17, 2009 prior to the recording of the assignment of the beneficial interest that

16  occurred on October 20, 2009, or at the earliest, the date of execution of the substitution of Aztec as

17  trustee on July 27, 2009.  Plaintiff's Opposition to Defendants' Motion for Summary Judgment or, in

18

19      [5] Like Defendants, Plaintiff argues that Defendants' discovery responses have been inadequate.

20  Again, these purported discovery failures are not properly before the Court.  Rule 56(f) provides that
    "[i]f a party opposing the [summary judgment] motion shows by affidavit that, for specified reasons, it
    cannot present facts essential to justify its opposition, the court may . . . order a continuance to enable

21  affidavits to be obtained, depositions to be taken, or other discovery to be undertaken."  Fed. R. Civ. P.
    56(f).  In the Ninth Circuit, to obtain a continuance under Rule 56(f), a party must establish: "(1) that

22  they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2)
    that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary

23  judgment motion."  *State of California, on Behalf of California Dept. of Toxic Substances Control v.
    Campbell*, 138 F.3d 772, 779 (9th Cir. 1998).  A district court's denial of a motion for further discovery

24  under Rule 56(f) is reviewed for an abuse of discretion.  *Nidds v. Schindler Elevator Corp.*, 113 F.3d
    912, 920 (9th Cir. 1996).  Further, "the district court does not abuse its discretion by denying further

25  discovery if the movant has failed diligently to pursue discovery in the past."  *Id.* at 921 (internal
    quotations omitted). Plaintiff has not submitted an affidavit setting forth specific facts he hopes to elicit

26  from further discovery.  *See Campbell*, 138 F.3d at 779 ("References in memoranda and declarations
    to a need for discovery do not qualify as motions under Rule 56(f).") (quoting *Brae Transp., Inc. v.*

27  *Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986)).  Plaintiff also does not specify the discovery
    that is needed and why it is necessary to his response to the Motion.  Moreover, his assertion that

28  "[f]urther discovery and time for discovery is needed" is belied by the fact that Plaintiff filed his original
    complaint over two years ago and he has not indicated why a motion to compel discovery was not filed
    at any time during those two years.

the Alternative, Summary Adjudication ("Opposition"), 11-12.  Plaintiff appears to argue that only the beneficiary may pursue non-judicial foreclosure "where the deed of trust contains an express provision granting a power of sale."  Opposition at 11 (citing *Ung v. Koehler*, 135 Cal. App. 4th 186, 192 (2005); *Huene v. Cribb*, 9 Cal. App. 141, 143-44 (1908)).  Plaintiff contends that the NOD recorded on July 17, 2009 is void and the entire foreclosure proceedings must be rescinded.  *Id.* at 12.

Additionally, Plaintiff contends that Defendants' alleged violation damaged Plaintiff in two ways.  First, the improper NOD "caused the foreclosure process to proceed forward prematurely, thus increasing the momentum toward foreclosure and resulting in a heightened level of anxiety and emotional well-being for Plaintiff and his entire family."  *Id.* at 12 (citing Ex. K (Lawther Depo.), 76-77).  Second, the premature NOD "adversely affected [Plaintiff's] credit."  *Id.* (citing Ex. K (Lawther Depo.), 76).  Presumably referencing the gap between when the NOD was executed on July 16, 2009 and when the Substitution of Trustee was executed on July 27, 2009, Plaintiff contends that this 11-day discrepancy is significant because the statutory violation "symbolizes the weight of injustice and 'above the law' conduct Plaintiff has suffered as a result of [Defendants'] conduct" and serves as a "constant reminder of [Plaintiff's] powerlessness."  *Id.*

Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 *et seq.*: Plaintiff rejects Defendants' argument that his attorney's letter to OneWest did not constitute a QWR.  *Id.* at 9.  Plaintiff asserts that his QWR sought information "regarding the crediting of payments on his mortgage account and asking for an accounting, as well as a demand for a copy of the Note with any modifications or assignments, identification of the owner and holder of the Note and mortgage, and a beneficiary statement, among other items."  *Id.*  Plaintiff further argues that his request disputed the amount owed, the accounting on the loan, and the validity of the chain of ownership.  *Id.*  Plaintiff's request is a valid QWR, he argues, because it complies with 12 U.S.C. § 2605 "which allows such a request to be made relating to 'assignment, sale, or transfer of loan servicing.'"  *Id.* (citing 12 U.S.C. § 2605(e)(1)(A)).  OneWest inadequately responded to his QWR by sending Plaintiff "a general denial letter and order form listing the documents Plaintiff is allowed to request and the amounts he would be charged for requesting them."  *Id.* (citing Ex. 9 (Response to Plaintiff's

Written Request)).  Plaintiff argues that the response is improper because 12 U.S.C. § 2605 does not allow loan servicers to charge fees for documents requested in a QWR.  *Id.*

Plaintiff argues that he has suffered actual emotional harm as a result of Defendants' failure to respond to his QWR.  *Id.* at 9-10 (citing Ex. K (Lawther Depo.), 75-76).  The emotional distress Plaintiff and his family suffer is "a direct result of the Defendants' initiation of the foreclosure process without providing adequate consideration of loan modification and work-out options."  *Id.* at 10.  Plaintiff asserts that the Defendants' failure to respond to his QWR prevented him from identifying "the real parties in interest with the authority to modify Plaintiff's loan," and thus presumably avoid foreclosure and the accompanying emotional distress.  *Id.*

Finally, Plaintiff alleges an additional RESPA violations.  Plaintiff argues that Defendants "violated RESPA by continuing [their] collection efforts and foreclosure proceedings after receiving Plaintiff's QWR and then reporting this activity to credit reporting agencies."  *Id.* at 10 (citing Ex. K (Lawther Depo.), 51).

Promissory Estoppel: Plaintiff rejects Defendants' contention that the oral loan modification agreement was a temporary forbearance, and instead asserts that the loan modification was to become permanent after Plaintiff made loan payments for March, April, and May of 2009.  *Id.* at 1, 7-8 (citing Ex. K (Lawther Depo.), 53-54, 57-59).  Plaintiff further argues that he relied on OneWest's promise to permanently modify his loan by making all three payments under the plan.  *Id.* at 8 (citing Ex. L (Modification Loan Payments)).  Additionally, Plaintiff appears to argue that his reliance on OneWest's promise resulted in the "imminent threat of foreclosure."  *Id.*

Breach of Implied Covenant of Good Faith and Fair Dealing: Plaintiff argues that OneWest breached the implied covenant of good faith and fair dealing on two separate occasions.  *Id.* at 12-13.  First, Plaintiff asserts that the original inception of the loan violated the covenant because the loan and its interest rate are "unconscionable."  *Id.* at 13.  Second, Plaintiff contends that OneWest's failure to modify Plaintiff's loan as promised also constituted a breach of the covenant.  *Id.*

Unlawful Business Practices Under Cal. Bus. & Prof. Code §§ 17200 *et seq.*: Plaintiff appears to reject Defendant's argument that he lacks standing to bring his claim under Section 17200.  *Id.* at 14.  Plaintiff has suffered "specific economic loss" due to Defendants' conduct,

United States District Court

For the Northern District of California

namely, Plaintiff has not received the permanent loan modification and therefore now stands to lose his house.  *Id.* (citing  Ex. K (Lawther Depo.), 51).  Plaintiff also argues that Defendants' conduct can violate Section 17200 even if it is not unlawful, but rather merely unfair.  *Id.* at 13 (citing *Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 850 (2002)).  Plaintiff states that whether conduct is unfair under Section 17200 is determined by "weigh[ing] the utility of the defendant's conduct against the gravity of the harm to the alleged victim."  *Id.* (citing *Gregory*, 104 Cal. App. 4th at 852).  Section 17200 is violated here, Plaintiff argues, because "the gravity of harm imposed by OneWest on Plaintiff outweighs the utility of Defendants' conduct."  *Id.* at 14.  Finally, Plaintiff appears to allege that at least one Defendant violated Section 17500, which makes it unlawful to disseminate untrue or misleading statements, and is prohibited by Section 17200.  *Id.* at 13 (citing *Ariz. Cartridge Remanufacturers Ass'n v. Lexmark Int'l, Inc.*, 421 F.3d 981, 985 (9th Cir. 2005)).  To support a claim under Sections 17200 and 17500, Plaintiff contends, "he need only allege unfair or fraudulent business practices or knowing dissemination of untrue or misleading statements."  *Id.*

### D.      The Reply

In their reply brief, Defendants reassert their previous arguments and point to specific issues where they argue that Plaintiff's claims lack evidence and fail as a matter of law.  Regarding the alleged RESPA violation, Defendants argue that Plaintiff's claim fails because nowhere in the alleged QWR does Plaintiff specifically state his reasons for believing the account was in error.  Defendants' Reply in Response to Plaintiff's Opposition to Defendants' Motion for Summary Judgment or, in the Alternative, Summary Adjudication ("Reply"), 8 (citing 12 U.S.C. § 2605(e)(1)(B)(ii); *Roberts v. JP Morgan Chase Bank, N.A.*, 2011 WL 4479455, at *5 (N.D. Cal. Sept. 26, 2011)).

Defendants further contend that Plaintiff has not produced enough evidence to prove his assertion that the oral agreement was for a permanent loan modification, rather than for a temporary forbearance.  Reply at 5.  Specifically, Defendants argue that Plaintiff's only evidence concerning the agreement, his deposition testimony, fails to establish any evidence as to the terms of the agreement.  *Id.*  In that regard, Defendants contend, "Plaintiff's 'belief' that the alleged forbearance

United States District Court

For the Northern District of California

1  plan 'would become permanent' are insufficient as a matter of law to state a cause of action for

2  promissory estoppel." *Id.* (citing *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1412 (9th Cir. 1995)).

3  **IV.    ANALYSIS**

4        **A.    Legal Standard Under Rule 56**

5        Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories,

6  and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

7  any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ.

8  P. 56(c).  Summary judgment must be supported by "facts as would be admissible in evidence."

9  Fed. R. Civ. P. 56(e).  In order to prevail, a party moving for summary judgment must show the

10  absence of a genuine issue of material fact with respect to an essential element of the non-moving

11  party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at

12  trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this showing,

13  the burden then shifts to the party opposing summary judgment to designate "specific facts showing

14  there is a genuine issue for trial."  *Celotex*, 477 U.S. at 323.  On summary judgment, the court draws

15  all reasonable factual inferences in favor of the non-movant.  *Anderson v. Liberty Lobby Inc.*, 477

16  U.S. 242, 255 (1986).

17        **B.    Negligence Per Se**

18        Defendants seek summary judgment on Plaintiff's claim for negligence per se based on

19  alleged violations of Cal. Civ. Code Sections 2924 and 2934a on the grounds that no underlying

20  statutory violation occurred and that Plaintiff has not produced any proof of injury caused by the

21  negligence, both of which are required elements for a negligence per se claim.  The Court grants the

22  Motion as to the negligence per se claim.

23          **1.    Background Law**

24        To state a claim for negligence, a plaintiff must allege: (1) the defendant's legal duty of care

25  to the plaintiff; (2) breach of that duty; (3) causation; and (4) resulting injury to the plaintiff.  *Merrill*

26  *v. Navegar, Inc.*, 26 Cal. 4th 465, 500 (2001).  "The legal duty of care may be of two general types:

27  (a) the duty of a person to use ordinary care in activities from which harm might reasonably be

28  anticipated, or (b) an affirmative duty where the person occupies a particular relationship to others."

United States District Court

For the Northern District of California

1  *McGettigan v. Bay Area Rapid Transit Dist.*, 57 Cal. App. 4th 1011, 1016–17 (1997).  "The

2  existence of a legal duty to use reasonable care in a particular factual situation is a question of law

3  for the court to decide." *Vazquez v. Residential Invs., Inc.*, 118 Cal. App. 4th 269, 278 (2004).  As a

4  general rule, under California law, "a financial institution owes no duty of care to a borrower when

5  the institution's involvement in the loan transaction does not exceed the scope of its conventional

6  role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089,

7  1095-96 (1991) (citations omitted).  Similarly, California courts have held, as a matter of law, that

8  the trustee under a deed of trust "is not a true trustee, and owes no fiduciary obligations; [it] merely

9  acts as a common agent for the trustor and beneficiary of the deed of trust." *Heritage Oaks Partners

10  v. First Am. Title Ins. Co.*, 155 Cal. App. 4th 339, 345 (2007) (citations omitted).  "California courts

11  have refused to impose duties on the trustee other than those imposed by statute or specified in the

12  deed of trust." *Id.* (citing *I.E. Assocs v. Safeco Title Ins. Co.*, 39 Cal. 3d 281, 287-88 (1985)).

13      In California, the test for determining whether a financial institution exceeded its role as

14  money lender and thus owes a duty of care to a borrower-client involves "the balancing of various

15  factors, among which are (1) the extent to which the transaction was intended to affect the plaintiff,

16  (2) the foreseeability of harm to him, (3) the degree of certainty that the plaintiff suffered injury, (4)

17  the closeness of the connection between the defendant's conduct and the injury suffered, (5) the

18  moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm."

19  *Nymark*, 231 Cal. App. 3d at 1098.

20      Negligence per se is an evidentiary presumption that a party failed to exercise due care if: (1)

21  it violated a statute, ordinance, or regulation of a public entity; (2) the violation proximately caused

22  death or injury to a person or property; (3) the death or injury resulted from an occurrence of the

23  nature the statute, ordinance, or regulation was designed to prevent; and (4) the person suffering the

24  death or the injury to his or her person or property was one of the class of persons for whose

25  protection the statute, ordinance, or regulation was adopted.  Cal. Evid. Code § 669.  The negligence

26  per se doctrine does not establish a claim for relief distinct from negligence.  *Cal. Serv. Station &

27  Auto. Repair Ass'n v. Am. Home Assurance Co.*, 62 Cal. App. 4th 1166, 1178 (1998) ("[A]n

28  underlying claim of ordinary negligence must be viable before the presumption of negligence of

United States District Court

For the Northern District of California

1   Evidence Code section 669 can be employed.").  Instead, the negligence per se doctrine treats a

2   statutory violation as evidence of negligence.  *See Sierra-Bay Fed. Land Bank Ass'n v. Superior*

3   *Court*, 227 Cal. App. 3d 318, 333 (1991).

4          California Civil Code Section 2924 controls the non-judicial foreclosure process in

5   California generally and, specifically, outlines what a notice of default must contain and from

6   whom it may issue.  Section 2924(a)(1) provides that foreclosure proceedings are commenced when

7   a "trustee, mortgagee, or beneficiary, or any of their authorized agents" files a notice of default.

8   Section 2934a establishes the process by which a trustee may be substituted.  That section provides

9   in part that "[t]he trustee under a trust deed upon real property . . . may be substituted by the

10  recording in the county in which the property is located . . . ."  Cal. Civ. Code § 2934a(a)(1).

11         **2.       Application of Law to Facts**

12         In his complaint and in his Opposition, Plaintiff asserts that Aztec lacked authority to file the

13  Notice of Default prior to being substituted as trustee.  Plaintiff argues that the result of Aztec's

14  negligence should be to void the foreclosure.  However, the Court finds that even if there is a

15  potential negligence claim, Plaintiff is not entitled to set aside the foreclosure proceedings.

16  Moreover, Plaintiff has not provided evidence that could establish that Aztec's violation caused him

17  any injury, a required element of his negligence claim.  For this reason, the Court concludes that

18  Plaintiff's negligence per se claim fails as a matter of law.

19         As an initial matter, Plaintiff has not alleged that OneWest, as the servicer of the loan and the

20  lender, owed any duty to Plaintiff or that OneWest breached any duty owed to Plaintiff.

21  Accordingly, the Court finds that Plaintiff's negligence per se claim against OneWest fails as a

22  matter of law.  Plaintiff has also failed to allege what duty was owed by MERS, and which of

23  MERS' actions breached that duty.  The Court therefore finds that Plaintiff's negligence per se claim

24  against MERS fails as a matter of law.

25         **a.       The Premature Filing of the NOD Does Not Void the Foreclosure**

26         Even if Aztec is found to be negligent, Plaintiff's argument that the defective NOD, which

27  resulted from the negligent behavior, voids the foreclosure is without merit.  As decided by this

28  Court, Plaintiff must show that he was prejudiced by the irregularity in the NOD in order to set aside

16

1    the foreclosure proceeding.  *See Lawther v. Onewest Bank*, 2010 WL 4936797, at *5 (N.D. Cal.

2    Nov. 30, 2010) (citing *Perry v. Nat'l Default Servicing Corp.*, 2010 WL 3325623, at *3 (N.D. Cal.

3    Aug. 20, 2010) ("In order for a defect in the notice of default to be material, it must cause

4    prejudice."); *Pantoja v. Country Wide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1186-87 (N.D. Cal.

5    2009) (rejecting claim that a notice of default signed by alleged non-beneficiary entitled borrower to

6    relief from foreclosure when borrower failed to allege prejudice); *Knapp v. Doherty*, 123 Cal. App.

7    4th 76, 99 (2004) (holding that irregularity in the notice of default must be material in order to set

8    aside a foreclosure)); *but c.f. Castillo v. Skoba*, 2010 WL 3986953, at *2 (S.D. Cal. Oct. 8, 2010)

9    (granting plaintiff's request for a temporary restraining order enjoining a foreclosure sale without a

10   showing of prejudice).

11       Plaintiff makes two arguments as to how he was prejudiced by the defective NOD.  First,

12   Plaintiff argues that the improper NOD caused the foreclosure process to commence prematurely.

13   However, there is no evidence that this eleven-day gap between the NOD and the Substitution of

14   Trustee caused any prejudice.  Nor is there any evidence that the foreclosure would not have

15   proceeded if the NOD was filed eleven days later.  Indeed, it is Plaintiff's default on his loan that is

16   the cause of any harm, not an eleven-day timing discrepancy.  Second, Plaintiff claims that the

17   improper filing of the NOD adversely affected his credit.  However, as Defendants point out,

18   Plaintiff has offered no proof of his credit score, or of any decline in his credit score, outside of

19   conclusory statements in his deposition.  Plaintiff's statements in his deposition concerning his

20   credit score comprise the following:

21       Q: Do you have any damages as a result of this notice of default being erroneously issued?

22       A: Yes, I do.

23       Q: And what are those damages?

24       A: My credit has been negatively affected.  I cannot apply for any loans.  This has costed me
         several hundred hours of stress.  It has cost me a lot of money . . . .

25
26       . . .

27       Q: You state that you have been damaged in terms of credit as a result of [the notice of
          default being erroneously issued].  Tell me specifically what you mean by that.

28       A: My credit rating is shot.

17

**United States District Court**
For the Northern District of California

Q: When did your credit rating go down?

A: I believe it has gotten worse since 2009.

Ex. K (Lawther Depo.), 51.

Q: What records would you look at to determine your monetary loss?

A: Attorneys' fees, bankruptcy filings.  There's [sic] a lot of things I would have to look at.  Credit ratings, loan values that I have.  I'd just have to look at everything.

*Id.* at 53.

Q: Are you aware of any money you've lost, any monetary loss, as a result of OneWest Bank's response or lack of response to [the QWR]?

A: I couldn't put a dollar amount on it.

Q: Does this get into what we talked about earlier, in terms of the general losses you were talking about?

A: Yes, sir.

*Id.* at 62.

Q: In what way [did Aztec cause you to be damaged]?

A: [Aztec] filed a notice of default prematurely, without having the authorization from MERS and IndyMac to do such, which has adversely affected my credit.

*Id.* at 76.

Plaintiff provides *no* evidence to support any of these conclusory statements of loss.  These statements, without more, are insufficient to show specific facts that present a genuine issue for trial.  *See F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").  Because Plaintiff is unable to show evidence of prejudice, as a matter of law, the foreclosure cannot be set aside, even if Aztec is found to be negligent.

**b.      Aztec's Authority to Execute the Notice of Default**

The Defendants have not met their burden on summary judgment in showing that there is no genuine issue as to Aztec's authority to execute the NOD.  Aztec's substitution as trustee occurred no earlier than July 27, 2009, when the Substitution of Trustee was executed and notarized.[6]

---

[6]  Plaintiff appears to argue that the effective date of substitution should be October 20, 2009, the date the Substitution of Trustee was recorded.  The statutory language, however, allows for a substitution to become effective upon recording, but does not require it.  *See*  Cal. Civ. Code §

United States District Court

For the Northern District of California

1   Accordingly, Aztec could not execute the NOD on July 16, 2009 as the substituted trustee.  Aztec

2   could have properly executed the NOD if it was the "authorized agent" of the "trustee, mortgagee, or

3   beneficiary."  Cal. Civ. Code § 2924(a)(1).  Although Defendants assert that Aztec was acting as

4   MERS' agent when Aztec executed the NOD, Defendants have provided no evidence to support that

5   argument.  Rather, Defendants simply provide conclusory statements that Aztec acted as the "agent

6   for [MERS]," and that "MERS was entitled to authorize its agent, Aztec, to commence foreclosure."

7   Motion at 8, 10.  There is no evidence in the record that Aztec was acting as the agent of MERS, and

8   indeed Aztec signed the NOD as "trustee," not as agent.  Defendants have failed to meet their

9   burden on summary judgment in showing that, as a matter of law, Aztec was acting as MERS' agent.

10   **c.   Plaintiff's Damages Caused by Defendants' Conduct**

11   Defendants argue that Plaintiff is unable to produce any evidence that he suffered injury as

12   the result of the filing of the NOD eleven days before the Substitution of Trustee was signed.  For

13   the reasons stated above in regards to prejudice, the Court agrees with Defendants.  Because Plaintiff

14   is unable to show evidence of damages, his negligence per se claim fails as a matter of law and

15   Defendants' motion for summary judgment on that claim is granted.

16   **C.   RESPA**

17   Defendants contend that summary judgment is proper on Plaintiff's RESPA claim because

18   Plaintiff's letter to OneWest does not meet the requirements of a QWR under 12 U.S.C. §

19   2605(e)(1)(B) and therefore no substantive response was required.  Alternatively, Defendants argue

20   that Plaintiff's claim fails because, even if the letter was a valid QWR, Plaintiff has failed to prove

21   he was damaged by OneWest's inadequate response.  As to Plaintiff's failure to produce any

22   evidence of damages, the Court agrees.

23

24

_____

25   2934a(a)(1) ("The trustee under a trust deed upon real property . . . *may be* substituted by the recording
26   in the county in which the property is located . . . ." (emphasis added)).  Moreover, the courts that have
     decided the issue have used the date of execution as the effective date.  *See Marks v. Green Tree*
27   *Servicing*, 2010 WL 4347943, at *7 (N.D. Cal. Oct. 27, 2010) ("The date of assignment, rather than the
     recording, of authority to file a notice of default is determinative.") (citing *Quintero Family Trust v.*
28   *OneWest Bank, F.S.B.*, 2010 WL 2618729, at *8 (S.D. Cal. June 25, 2010)); *see also Castillo v. Skoba*,
     2010 WL 3986953, at *2 (S.D. Cal. Oct. 8, 2010) (finding the notarized date on the Substitution of
     Trustee to be the earliest date the substitution became effective).

### 1.    Background Law

Section 2605 of RESPA governs QWRs as follows:

(A) In general

If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) *for information relating to the servicing of such loan*, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

(B) Qualified written request

a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--

(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error *or* provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(A)-(B) (emphasis added).

A valid response to a QWR requires the following:

Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall--

(A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

(B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes–

(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

20

United States District Court

For the Northern District of California

1    12 U.S.C. § 2605(e)(2).

2          Additionally, RESPA places a moratorium on the servicer's ability to contact consumer

3    reporting agencies following the receipt of a QWR, as the statute states:

4          (3) Protection of credit rating

5          During the 60-day period beginning on the date of the servicer's receipt from any borrower of
     a qualified written request relating to a dispute regarding the borrower's payments, a servicer
6    may not provide information regarding any overdue payment, owed by such borrower and
     relating to such period or qualified written request, to any consumer reporting agency.
7

8    12 U.S.C. § 2605(e)(3).

9          "Not all requests that relate to the loan are related to the servicing of the loan." *Williams v.*

10   *Wells Fargo*, 2010 WL 1463521, at *3 (N.D. Cal. Apr. 13, 2010).  "A loan servicer only has a duty

11   to respond if the information request is related to loan servicing." *Copeland v. Lehman Bros. Bank,*

12   *FSB*, 2010 WL 2817173, at *3 (S.D. Cal. July 15, 2010).

13         Alleging a breach of RESPA duties alone does not state a claim under RESPA.  Plaintiffs

14   must, at a minimum, also prove that the breach resulted in actual damages or was part of a pattern or

15   practice of noncompliance.  *See* 12 U.S.C. § 2605(f)(1)(A) ("Whoever fails to comply with this

16   section shall be liable to the borrower . . . [for] any actual damages to the borrower as a result of the

17   failure; and . . . any additional damages, as the court may allow, in the case of a pattern or practice of

18   noncompliance with the requirements of this section, in an amount not to exceed $1,000."); *see also*

19   *Wornum v. Aurora Loan Servs., Inc.*, 2011 WL 3516055, at *10 (N.D. Cal. Aug. 11, 2011).

20              **2.    Application of Law to Facts**

21         Plaintiff's RESPA claim is based on OneWest's[7] inadequate response to Plaintiff's QWR and

22   OneWest's behavior in allegedly reporting Plaintiff's missed payments to credit reporting agencies.

23   Because Plaintiff has produced no evidence that he suffered damages as a result of OneWest's

24   failure to respond to his QWR, or any evidence that OneWest ever reported his missed payments to

25

26

27         [7]  12 U.S.C. § 2605(e) applies only to loan servicers.  *See Lingad v. Indymac Fed. Bank*, 682 F.
     Supp. 2d 1142, 1151 (E.D. Cal. 2010).  OneWest is undisputedly the sole servicer of Plaintiff's loan.
28   *See* Joint Statement at ¶ 10.  Accordingly, OneWest is the only Defendant to which Plaintiff's RESPA
     claim may apply.

1   credit reporting agencies, the Court grants Defendants' motion for summary judgment on Plaintiff's

2   RESPA claim.

### a.      Failure to Respond

4         OneWest fails to meet its burden on summary judgment in proving that, as a matter of law,

5   Plaintiff's letter did not constitute a QWR, and that its response to the QWR met the requirements of

6   Section 2605.

### i.      The Qualified Written Request and Response

8         The Court rejects OneWest's argument that Plaintiff's letter did not constitute a QWR

9   because it failed to state Plaintiff's reasons for believing the account was in error.  Section

10  2605(e)(1)(B) is written in the disjunctive and therefore does not require that a QWR necessarily

11  contain "a statement of the reasons for the belief of the borrower, to the extent applicable, that the

12  account is in error."  12 U.S.C. § 2605(e)(1)(B)(ii).  A QWR is still valid if it instead "provides

13  sufficient detail to the servicer regarding other information sought by the borrower."  *Id.*  Moreover,

14  while Plaintiff's QWR is quite broad, some of Plaintiff's requests relate directly to the servicing of

15  the loan and "provide[] sufficient detail to the servicer regarding other information sought by the

16  borrower" as required under RESPA.  *Id.*; *see also Manzamo v. Metlife Bank N.A.*, 2011 WL

17  3420822, at *2 (E.D. Cal. Aug. 3, 2011) (finding that a borrower's letter can constitute a QWR

18  despite the letter's inclusion of allegedly "extraneous" and "overly burdensome" requests).

19        OneWest does not argue that its January 25, 2010 letter to Plaintiff's lawyer constituted an

20  adequate response to Plaintiff's QWR; rather, Defendants' Motion and Reply state that "no

21  substantive response was required."  Motion at 13; Reply at 8.  Moreover, OneWest's response

22  states that Plaintiff's letter "[did] not constitute a QWR" and that the response "is provided solely as

23  a matter of customer service."  Ex. 9 (Response to Plaintiff's Written Request).  The letter goes on to

24  assert that OneWest "declines to provide the information requested" for those "inquiries which go

25  beyond the scope of a legitimate QWR."  *Id.*  The only documents OneWest states it is willing to

26  provide are copies of certain original documents which can be requested, for a fee, using an enclosed

27

28

order form.[8]  *Id.*  Defendants make no effort to demonstrate that the order form it provided qualifies as an adequate response.  The Court has examined the response and finds that it lacks particular servicing information requested by Plaintiff, including a "Statement of Account," a breakdown of the amount of claimed arrears or delinquencies, and a breakdown of payments as to principal, interests, fees, and costs.  *See* Ex. 17 (Plaintiff's Discovery Production: OneWest's Document Request Form), 8-9; *see also* Ex. M (Plaintiff's QWR), ¶¶ 1, 2, 9.  Because of these apparent deficiencies, the Court cannot conclude that OneWest adequately responded to Plaintiff's QWR.

### ii.   Damages

Defendants contend that Plaintiff's RESPA claim fails because Plaintiff is unable to show either pecuniary damages or a pattern or practice of noncompliance.  As to pecuniary damages, this Court held, on the first motion to dismiss, that the "actual damages" requirement in Section 2605(f)(1)(A) necessitated that Plaintiff demonstrate some pecuniary loss.  Order Granting Defendants' Motion to Dismiss ("First Order"), 6 (citing *Molina v. Wash. Mut. Bank*, 2010 WL 431439, at *7 (S.D. Cal. Jan. 29, 2010) (collecting cases); *Wilson v. JPMorgan Chase Bank, NA*, 2010 WL 2574032, at *9-10 (E.D. Cal. June 25, 2010)).  "This pleading requirement," the First Order emphasized, "has the effect of limiting the cause of action to circumstances in which plaintiffs can show that a failure of notice has caused them actual harm."  First Order at *6-7 (citing *Allen v. United Fin. Mortgage Corp.*, 660 F. Supp. 2d 1089, 1097 (N.D. Cal. 2009)).  Some courts have held that emotional harm can constitute actual damages under RESPA.  *See Lawther*, 2010 WL 4936797, at *7 ("Courts in the Ninth Circuit have interpreted the pecuniary loss requirement liberally; several have considered an averment of emotional harm sufficient to recover actual damages under RESPA.") (citing *Apodaca v. HSBC Bank USA*, 2010 WL 1734945, at *3-4 (S.D. Cal. Apr. 7, 2010).  "'The Ninth Circuit has not decided whether emotional distress can constitute 'actual damages' for purposes of § 2605(f), and cases are split.'"  *Obot v. Wells Fargo Bank,* N.A., 2011 WL 5243773, at

---

[8]  To the extent Plaintiff argues that servicers are not allowed to charge a fee for documents requested in a QWR, Plaintiff fails to cite to any part of the statute or to any case law to support his argument.  Moreover, available case law on the issue rejects Plaintiff's assertion.  *See Watt v. GMAC Mortgage Corp.*, 457 F.3d 781, 783 (8th Cir. 2006) (finding responses to QWRs not in the class of statements for which RESPA forbids a servicer from charging borrowers a fee).

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1   *3 (N.D. Cal. Nov. 2, 2011) (quoting *Phillips v. Bank of Am. Corp.*, 2011 WL 4844274, at *5 (N.D.

2   Cal. Oct.11, 2011)).  The Court concludes that Plaintiff cannot show either type of injury.

3          The Court finds that even if it is assumed that Plaintiff could claim emotional damages under

4   RESPA, the Plaintiff fails to proffer any evidence showing that his emotional damage was caused by

5   the alleged violation.  Plaintiff claims that his emotional distress arose because of OneWest's failure

6   to provide the requested information, which would have identified the party with the authority to

7   modify his loan.  To the extent Plaintiff believes he is entitled to receive loan ownership information

8   through a QWR, he is mistaken.  Seeking information as to the owner of the loan is not a valid

9   purpose of a QWR; rather, a QWR can only request information regarding servicing the loan.  12

10  U.S.C. § 2605(e)(1)(A); *see Gates v. Wachovia Mortgage,* FSB, 2010 WL 2606511, at *3-4 (E.D.

11  Cal. June 28, 2010) (holding that inquiry into ownership of a loan does not qualify as a QWR);

12  *Philips v. Bank of Am. Corp.*, 2010 WL 1460824, at *4 (N.D. Cal. April 9, 2010) (finding defendant

13  had no duty under RESPA to respond to plaintiff's QWR because it related to origination and

14  modification of a loan, not its servicing).  Because OneWest was not required under RESPA to

15  produce information regarding ownership of the loan, Plaintiff's theory of damages rests on the

16  unsubstantiated and unarticulated possibility that information relating to servicing the loan would

17  identify the "investors of Plaintiff's Note who are the real parties in interest with the authority to

18  modify Plaintiff's loan."  Opposition at 9-10.  It is Plaintiff's obligation to "point to some colorable

19  relationship between his injury and the actions or omissions that allegedly violated RESPA."  *Allen*,

20  2010 WL 1135787, at *5.  Plaintiff has presented no evidence or made any argument beyond

21  conclusory factual assertions that receiving loan servicing information would reveal the loan's

22  ownership information.  Additionally, as pointed out by this Court previously, Plaintiff *did* know it

23  was OneWest who had the authority to modify his loan.  Plaintiff did attempt, although

24  unsuccessfully, to modify his loan with OneWest nearly a year before his attorney sent the QWR.

25  Moreover, Plaintiff's claim that the failure to respond to his QWR led to the initiation of foreclosure

26  proceedings is contradicted by the undisputed facts.  "Lawther sent his QWR months *after* issuance

27  of the Notice of Default and Notice of Trustee Sale or, in other words, after events directly

28  connected to the emotional harm he alleges."  *Lawther*, 2010 WL 4936797, at *7.  Accordingly,

United States District Court

For the Northern District of California

1  Plaintiff has not produced evidence of actual harm causally connected to the alleged RESPA

2  violation in order to survive Defendants' motion for summary judgment.

3       Plaintiff is also unable to collect statutory damages because he presents no evidence that the

4  violation is part of a "pattern or practice of noncompliance." 12 U.S.C. § 2605(f)(1)(A). Rather,

5  Plaintiff asks the Court to "presume" OneWest has engaged in the same non-responsive behavior

6  with other borrowers. *See* TAC at 12.

7                  **b.**     **Providing Information to Credit Reporting Agencies**

8       Plaintiff further alleges that OneWest violated the 60-day statutory prohibition on providing

9  information regarding his default to credit reporting agencies. However, Plaintiff has not produced

10  evidence to prove that any Defendant provided his information to a credit reporting agency at all, let

11  alone during the sixty days following OneWest's receipt of Plaintiff's QWR. Even in his conclusory

12  factual statements in his deposition, Plaintiff does not say that the alleged reporting to credit

13  agencies occurred within sixty days of OneWest's receipt of the QWR.

14       Accordingly, the Court finds that Plaintiff's RESPA claim fails as a matter of law.

15  **D.**     **Promissory Estoppel**

16       Defendants assert that Plaintiff's promissory estoppel claim fails because: 1) Plaintiff cannot

17  establish a promise to modify the loan permanently; 2) Plaintiff does not produce any evidence that

18  the alleged oral agreement involved new consideration; and 3) Plaintiff has failed to show

19  detrimental reliance and unconscionable injury. The Court concludes that Plaintiff's claim fails as a

20  matter of law.

21                **1.**     **Background Law**

22       Under California law, "[u]nless the contract otherwise expressly provides, a contract in

23  writing may be modified by an oral agreement supported by new consideration." Cal. Civ. Code §

24  1698(c). However, "[t]he statute of frauds (Section 1624) is required to be satisfied if the contract as

25  modified is within its provisions." *Id*. The statute of frauds states that an "agreement . . . for the sale

26  of real property, or of an interest therein," is "invalid[ ] unless [it], or some note or memorandum

27  thereof, [is] in writing and subscribed by the party to be charged or by the party's agent." Cal. Civ.

28  Code § 1624(a)(3). The statute of frauds, however, does not preclude "the application of rules of

United States District Court

For the Northern District of California

law concerning estoppel." Cal. Civ. Code § 1698(d).  Where consideration is lacking, a contract

may nonetheless be enforceable under the doctrine of promissory estoppel.  *See Raedeke*, 10 Cal. 3d

at 672-673 ("[T]he doctrine of promissory estoppel is used to provide a substitute for the

consideration which ordinarily is required to create an enforceable promise.").  A claim for

promissory estoppel requires that the following elements be established: "(1) a promise clear and

unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) his reliance

must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by

his reliance."  *Laks v. Coast Fed. Sav. & Loan Ass'n.*, 60 Cal. App. 3d 885, 890 (1976).

Under the doctrine of promissory estoppel, "a promisor is bound when he should reasonably

expect a substantial change of position, either by act or forbearance, in reliance on his promise, if

injustice can be avoided only by its enforcement." *Id.* (citing *Youngman v. Nev. Irrigation Dist.*, 70

Cal. 2d 240, 249 (1969)).  For example, in *Garcia v. World Sav., FSB*, 183 Cal. App. 4th 1031

(2010), the court held that a gratuitous oral promise to postpone a foreclosure sale gave rise to an

enforceable promise under the doctrine of promissory estoppel where the borrowers had applied for

an expensive loan from a third party in order to cure the default and had been told their house would

not be sold before that loan closed.  *Id.* at 1041.  The court explained that "[a]ppellants' actions in

procuring a high cost, high interest loan by using other property they owned as security is sufficient

to support detrimental reliance although it provided no particular benefit to respondent."  *Id.*

## 2.    Application of Law to Facts

Although the Defendants contest the nature of the oral agreement, they concede that some

sort of agreement was made that involved mortgage payments during the beginning months of 2009.

The key dispute is whether OneWest promised to forbear foreclosing temporarily or permanently on

Plaintiff's property if certain payments were made.  Defendants insist their version of the agreement

is correct, but they put forward no evidence to conclusively prove their assertion.[9]  Plaintiff has

---

[9]  Accompanying their Reply, Defendants attach an exhibit to their attorney's declaration that
purports to be the Loan's servicing notes.  *See* Declaration of Tiffany M. Birkett, Esq. in Support of
Defendants' Reply ("Birkett Reply Decl."), Ex. 2 (Servicing Notes). Ms. Birkett's declaration, without
explanation, concludes that the document "reflects the repayment plan at issue, which shows that the
repayment plan adjusted Plaintiff's payments for February 2009, March 2009, April 2009, May 2009,
and June 2009."  Birkett Reply Decl. at ¶ 6. It is not, however, self-evident what the document reflects.
Without any attempt to clarify the document for the Court, and without any argument for its

United States District Court

For the Northern District of California

1    submitted deposition testimony and bank statements, which purportedly show payments made

2    pursuant to the agreement.  *See* Ex. K (Lawther Depo.); Ex. L (Modification Loan Payments).  In his

3    deposition, Plaintiff states that he entered into a verbal "loan modification" agreement with his bank.

4    Ex. K (Lawther Depo.), 53-54, 59, 94.  The Court cannot say that no reasonable jury could rule in

5    Plaintiff's favor that there is a promise clear and unambiguous in its terms to modify Plaintiff's loan

6    permanently.  There is at least a question of fact on this issue that is not appropriate for resolution on

7    summary judgment.

8         In order to maintain his promissory estoppel claim, Plaintiff need not present evidence

9    showing that the oral agreement involved new consideration, as Defendants seem to suggest; rather,

10   Plaintiff must show that he reasonably relied on OneWest's promise to modify his loan permanently

11   and such reliance was detrimental.  Plaintiff claims he made mortgage payments pursuant to the

12   permanent loan modification agreement for March, April, and May of 2009, and provides evidence

13   of such payments.  To the extent Defendants argue that Plaintiff missed a June 2009 payment

14   required under the repayment plan and he therefore cannot claim that he reasonably relied on

15   OneWest's promise, the Court rejects Defendants' argument.  Under Plaintiff's version of the

16   promise, he was not required to make a June 2009 payment.  Accordingly, Plaintiff's March, April,

17   and May 2009 payments show sufficient reasonable reliance in order to avoid summary judgment.

18        However, Plaintiff has not presented sufficient evidence supporting the fourth required

19   element for promissory estoppel, that he was injured as a result of his reliance.  This Court has

20   previously held, along with other courts, that where the injury alleged as a result of reliance is that

21   the plaintiffs made payments that they were already obligated to make under the loan contract, no

22   claim for promissory estoppel is stated.  *See Perez v. Wells Fargo Bank, N.A.*, 2011 WL 3809808, at

23   *20-21 (N.D. Cal. Aug. 29, 2011); *Reyes v. Walls Fargo*, 2011 WL 30759, at *5 (N.D. Cal. Jan. 3,

24   2011); *Newgent v. Wells Fargo Bank, N.A.*, 2010 WL 761236, at *7 (S.D. Cal. Mar. 2, 2010)

25   ("Plaintiff alleges that she made a payment that she would not have made if she did not believe

26   Wells Fargo was renegotiating her mortgage.  Because Plaintiff was already legally obligated to

27

28   _____

consideration in their Motion or Reply, the Court cannot properly determine the significance of the
servicing notes.

1  make payments on her mortgage, the Court concludes that the payment in reliance on the promise

2  that Wells Fargo would delay the trustee's sale was not detrimental."). Accordingly, Plaintiff's loan

3  payments made in reliance on OneWest's loan modification promise are insufficient as a matter of

4  law to constitute detrimental reliance, since Plaintiff was already obligated to make those payments.

5      Beyond the loan payments, Plaintiff appears to allege two additional injuries resulting from

6  his reliance. Plaintiff argues that the injury resulting from his reliance on OneWest's promise is the

7  "imminent threat of foreclosure." Plaintiff's argument is contradicted by the facts. Plaintiff's

8  reliance on Defendant's alleged promise did not cause it to foreclose. Rather, Plaintiff's admitted

9  default on the loan on or around September 2008 is the cause of the foreclosure. Second, in his TAC

10  but not in his Opposition, Plaintiff claims he detrimentally relied on OneWest's promise by

11  foregoing an "attempt to sell his home or relocate his family." TAC at ¶ 61. These options, it is

12  alleged, are no longer available to Plaintiff due to his bad credit arising out of the foreclosure

13  proceedings. TAC at ¶ 61. Plaintiff, however, has not presented any evidence to support these

14  allegations. This complete lack of evidence is insufficient to maintain a claim of promissory

15  estoppel. *See Mehta v. Wells Fargo Bank, N.A.*, 737 F. Supp. 2d 1185, 1199 (S.D. Cal. 2010)

16  (dismissing promissory estoppel claim because of failure to allege facts that supported the plaintiff's

17  vague allegations that he would have pursued other options to avoid foreclosure but for Wells

18  Fargo's promise); *see also Newgent*, 2010 WL 761236, at *7 (dismissing plaintiff's promissory

19  estoppel claim due to failure to allege detrimental reliance where plaintiff forwent legal action in

20  reliance on bank's promise not to delay sale of the home, but plaintiff did not "allege facts that could

21  establish that [p]laintiff would have been successful in delaying the foreclosure sale, renegotiating

22  her loan, and retaining possession of the home"). Therefore, the Court finds that Plaintiff's claim for

23  promissory estoppel against OneWest fails as a matter of law and summary judgment is granted.

24      With respect to MERS and Aztec, Plaintiff has not proven any of the elements of promissory

25  estoppel. Therefore, his promissory estoppel claim against MERS and Aztec fails as well.

26

27

28

**E.     Breach of the Implied Covenant of Good Faith and Fair Dealing**

      **1.     Background Law**

"There is implied in every contract a covenant by each party not to do anything which will deprive the other parties thereto of the benefits of the contract." *Harm v. Frasher*, 181 Cal. App. 2d 405, 417 (1960). A breach of contract may be established on the basis of either an express provision of the contract or on the implied covenant of good faith and fair dealing. *See Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*, 100 Cal. App. 4th 44, 55 (2002) (recognizing that "every contract imposes upon each party a duty of good faith and fair dealing in the performance of the contract such that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract"). An implied covenant of good faith and fair dealing cannot contradict the express terms of a contract. *Id.* (citing *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 374 (1992)). Further, because "the implied covenant operates to protect the express covenants or promises of [a] contract . . . [it] cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of [the parties'] agreement." *McClain v. Octagon Plaza, LLC*, 159 Cal. App. 4th 784, 805 (2008).

      **2.     Application to the Facts**

Plaintiff's three allegations of breach of the implied covenant of good faith and fair dealing all fail as a matter of law.

First, Plaintiff argues that the original inception of the loan violated the covenant because the making of the loan and its interest rate were "unconscionable." However, the Court has already rejected the argument that Defendants' alleged behavior during the consummation of the contract could constitute a breach of the covenant. First Order at *9-10. The alleged fraudulent conduct of inserting a false income into the loan documents occurred prior to the contract's execution and cannot, as a matter of law, constitute a breach of the covenant. *See Newsom v. Countrywide Home Loans, Inc.*, 714 F. Supp. 2d 1000, 1007 (N.D. Cal. 2010) ("Pre-contract conduct . . . cannot support a claim for breach of the implied covenant of good faith and fair dealing.") (citing *McClain*, 159 Cal. App. 4th at 799). Moreover, Plaintiff cites no authority for the proposition that insertion of an unconscionable term into a contract can give rise to a claim for breach of the covenant. In any

United States District Court

For the Northern District of California

1  event, there is no evidence that the term here is unconscionable.  Finally, even if the making of the

2  loan and its interest rate were unconscionable, the Defendants did not originate the loan and there is

3  no evidence that they assumed the liabilities of the originator.

4  The Court rejects Plaintiff's second contention that OneWest breached the covenant when it

5  refused to modify his loan as promised, because, as discussed above, Plaintiff has not established an

6  enforceable contract to modify his loan.  In the absence of a contract to modify, there can be no

7  breach of the covenant by failure to modify.

8  Finally, Plaintiff's assertion in his complaint that a failure to comply with Cal. Civ. Code

9  Sections 2924 and 2934a constitutes a breach of the covenant is unsupported by law and therefore

10  rejected by the Court.  Plaintiff has presented no authority to support his claim that a court may infer

11  a breach of a covenant implied in a contract from the violation of a statute's terms.  Indeed, as one

12  California appellate court reasoned, "the covenant of good faith and fair dealing is, by definition, an

13  implied contract term.  It has no relation to any statutory duties which may exist."  *Smith v. City &*

14  *County of San Francisco*, 225 Cal. App. 3d 38, 49 (1990); *see also Acosta v. Wells Fargo Bank,*

15  *N.A.*, 2010 WL 2077209, at *5 (N.D. Cal. May 21, 2010) (rejecting argument that violation of

16  California's wrongful foreclosure statutes demonstrated breach of the covenant implied in loan

17  agreements).  Therefore, the Court finds that Plaintiff's claim for breach of the implied covenant of

18  good faith and fair dealing fails as a matter of law and summary judgment is granted.

19  With respect to Aztec, Plaintiff has not proven any of the elements of breach of the implied

20  covenant.  Therefore, his breach of the implied covenant claim against Aztec fails as well.

21  **F.**    **UCL**

22  Defendants seek summary judgment on Plaintiff's California Business & Professions Code

23  Sections 17200 *et seq.* ("UCL") claim on three grounds: 1) Plaintiff's claim is preempted by the

24  Home Owners Loan Act ("HOLA"); 2) Plaintiff has not suffered actual injury as the result of

25  Defendant's conduct and he therefore lacks standing to bring his claim; and 3) even if Plaintiff's

26  claim is not preempted and he does have standing, Plaintiff is unable to establish any predicate

27  unlawful act to serve as the basis for his claim.  The Court concludes that Plaintiff's Section 17200

28  claim fails as a matter of law and grants summary judgment for Defendants.

1.      **Background Law**

a.      **Preemption**

United States Department of Treasury regulations enacted pursuant to HOLA state the

preemptive effect of the statute as follows:

> Occupation of field. Pursuant to sections 4(a) and 5(a) of the HOLA, 12 U.S.C. 1463(a), 1464(a), [OTS] is authorized to promulgate regulations that preempt state laws affecting the operations of federal savings associations when deemed appropriate to facilitate the safe and sound operation of federal savings associations, to enable federal savings associations to conduct their operations in accordance with the best practices of thrift institutions in the United States, or to further other purposes of the HOLA.  To enhance safety and soundness and to enable federal savings associations to conduct their operations in accordance with best practices (by efficiently delivering low-cost credit to the public free from undue regulatory duplication and burden), OTS hereby occupies the entire field of lending regulation for federal savings associations.  OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation.  Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section or § 560.110 of this part.  For purposes of this section, "state law" includes any state statute, regulation, ruling, order or judicial decision.

12 C.F.R. § 560.2(a).

Subsection (b) of the regulation offers specific examples of the types of state laws that are

preempted.  Among the enumerated state laws preempted are the following:

> (4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;
>
> (5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;
> . . .
>
> (9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;
>
> (10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages;

12 C.F.R. § 560.2(b).

Finally, subsection (c) creates an exclusion to preemption for state laws that "only

incidentally affect the lending operations of Federal savings associations or are otherwise consistent

with the purposes of paragraph (a)," and lists specific types of state laws, including "contract and commercial law" that are *not* preempted under the regulation. *See* 12 C.F.R. § 560.2(c).

The Office of Thrift Supervision has instructed that the question of whether a state law is preempted under Section 560.2 should be analyzed as follows:

> When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

OTS, Final Rule, 61 Fed.Reg. 50951, 50966–67 (Sept. 30, 1996).

In *Silvas v. E*Trade Mortgage Corp.*, 514 F.3d 1001 (9th Cir. 2008), the plaintiffs asserted claims under the UCL based on the allegation that the defendant had advertised that certain payments were non-refundable whereas the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*, required that the defendant make a refund available. *Silvas*, 514 F.3d at 1003. Although the statute of limitations under TILA expired at the time the plaintiffs filed the action, the statute of limitations under the UCL had not. *Id*. The question before the court was whether the UCL claim was preempted by HOLA. *Id*. The court held, based on 12 C.F.R. § 560.2, that HOLA preempted the plaintiffs' claims because the plaintiffs sought to use the UCL to directly regulate credit activities. *Id*. at 1006 (applying 12 C.F.R. § 560.2(b)). In reaching this conclusion, the court relied, in part, on the fact that subsection (b) of 12 C.F.R. § 560.2, which lists specific types of state laws that are preempted by HOLA, includes state laws that regulate "loan-related fees" and "disclosure and advertising." *Id*. (citing 12 C.F.R. § 560.2(b)(5); § 560.2(b)(9)).

Numerous courts in this district have held that state laws requiring banks to provide specific notices or disclosures during the foreclosure process are preempted by HOLA. *See, e.g., Giordano v. Wachovia Mortgage, FSB*, 2010 WL 5148428, at *3–4 (N.D. Cal. Dec. 14, 2010) (finding that HOLA preempts state laws setting forth procedures for filing a notice of default and conducting a foreclosure sale); *Odinma v. Aurora Loan Servs.*, 2010 WL 1199886, at *8 (N.D. Cal. Mar. 23, 2010) (holding that Cal. Civ. Code Section 2923.5, requiring that lenders contact borrowers before

1    initiating foreclosure, is preempted by HOLA).  On the other hand, when a claim is based on the

2    general duty not to misrepresent material facts, and when application of a state law does not regulate

3    lending activity, district courts have found that the claims are not preempted by HOLA.  *See, e.g.,*

4    *DeLeon v. Wells Fargo Bank, N.A.*, 2011 WL 311376, at * 5–6 (N.D. Cal. Jan. 28, 2011) (finding

5    that HOLA did not preempt UCL claim based on misrepresentation but dismissing claim for failure

6    to allege injury); *Biggins v. Wells Fargo & Co.*, 266 F.R.D. 399, 417 (N.D. Cal. 2009)

7    (distinguishing between allegations of inadequate disclosures of loan terms and affirmative, material

8    misrepresentations); *Ibarra v. Loan City*, 2010 WL 415284, at *5 (S.D. Cal. Jan. 27, 2010)

9    (misrepresentation of material facts not preempted by HOLA).

10                              **b.      Standing**

11           A claim for unfair competition under the UCL may be brought "by a person who has suffered

12   injury in fact and has lost money or property as a result of the unfair competition."  Cal. Bus. & Prof.

13   Code § 17204.  Therefore, to establish standing under the UCL a plaintiff must "(1) establish a loss

14   or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and

15   (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice . . .

16   that is the gravamen of the claim."  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 337 (2011).

17   There is no causation "when a complaining party would suffer the same harm whether or not a

18   defendant complied with the law."  *Daro v. Superior Court*, 151 Cal. App. 4th 1079, 1099 (2007).

19                              **c.      UCL Violation**

20           The UCL prohibits "unfair competition," which is defined as any "unlawful, unfair or

21   fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  To establish a violation of the

22   UCL, a plaintiff may establish a violation under any one of these prongs.  To state a cause of action

23   based on an unlawful business act or practice under the UCL, a plaintiff must allege facts sufficient

24   to show a violation of some underlying law.  *People v. McKale*, 25 Cal. 3d 626, 635 (1979).

25   "'Fraudulent,' as used in the statute, does not refer to the common law tort of fraud but only requires

26   a showing that members of the public 'are likely to be deceived.'"  *Olsen v. Breeze*, 48 Cal. App. 4th

27   608, 618 (1996).

28

Finally, while there is disagreement among California courts regarding the definition of "unfair" business practices, three tests have been applied, as the court in *Phipps v. Wells Fargo* explains:

> In consumer cases, such as this, the California Supreme Court has not established a definitive test to determine whether a business practice is unfair. *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal.App.4th 247, 256, 106 Cal.Rptr.3d 46 (2010). A split of authority has developed among the California Courts of Appeal, which have applied three tests for unfairness in consumer cases. *Drum*, 182 Cal.App.4th at 256, 106 Cal.Rptr.3d 46.
>
> The test applied in one line of cases requires "that the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions." *Drum*, 182 Cal.App.4th at 256, 106 Cal.Rptr.3d 46 (citing *Bardin v. Daimlerchrysler Corp.*, 136 Cal.App.4th 1255, 1260–1261, 39 Cal.Rptr.3d 634 (2006); *Davis v. Ford Motor Credit Co.*, 179 Cal.App.4th at581, 595–596, 101 Cal.Rptr.3d 697 (2009); *Gregory v. Albertson's Inc.*, 104 Cal.App.4th 845, 854, 128 Cal.Rptr.2d 389 (2002).
> . . .
>
> A second line of cases applies a test to determine whether the alleged business practice "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Drum*, 182 Cal.App.4th at 257, 106 Cal.Rptr.3d 46 (citing *Bardin*, 136 Cal.App.4th at 1260, 39 Cal.Rptr.3d 634; *Davis*, 179 Cal.App.4th at 594–595, 101 Cal.Rptr.3d 697)).
> . . .
>
> The test applied in a third line of cases draws on the definition of "unfair" in section 5 of the Federal Trade Commission Act (15 U.S.C. § 45, subd. (n)), and requires that "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *Drum*, 182 Cal.App.4th at 257, 106 Cal.Rptr.3d 46 (citing *Davis*, 179 Cal.App.4th 597–598, 101 Cal.Rptr.3d 697; *Camacho v. Automobile Club of Southern California*, 142 Cal.App.4th 1394, 1403, 48 Cal.Rptr.3d 770 (2006)).

2011 WL 302803, at *16 (E.D. Cal. Jan. 27, 2011).

### 2.    Application of Law to Facts

Plaintiff's UCL claim, as laid out in his Third Amended Complaint ("TAC"), is based on three of Defendants' alleged actions: 1) violation of California Civil Code Sections 2924 and 2934a; 2) failure to respond to the QWR in violation of RESPA; and 3) breach of the oral modification agreement. In his Opposition, Plaintiff argues, for the first time, that at least one Defendant, presumably OneWest, disseminated untrue or misleading statements in violation of Cal. Bus. & Prof. Code § 17500. Plaintiff argues in his Opposition, again for the first time, that OneWest's untrue and

34

1    misleading statements and omissions related to the modification agreement are also "unfair" under

2    the UCL.[10]

3                         **a.       Standing**

4          Plaintiff has identified two possible bases for economic injury under Section 17204: 1)

5    initiation of foreclosure proceedings and impending loss of property; and 2) the loss of three months

6    of mortgage payments made in reliance on the loan modification agreement.  Both of these bases are

7    addressed in turn.

8          Plaintiff asserts that he is injured by Defendants' conduct in filing the defective NOD and not

9    responding to his QWR because those actions have led to the initiation of foreclosure proceedings

10   and he now stands to lose his house.  Defendants argue that "[a]llegations of impending harm are

11   insufficient to plead an injury in fact for purposes of § 17200."  Motion at 18 (citing *Peterson v.*

12   *Cellco P'ship*, 164 Cal. App. 4th 1583, 1591 (2008)).  The case upon which Defendants rely,

13   however, is not on point and merely stands for the undisputed statement of law that Section 17204

14   requires a showing of direct injury to money or property.  Directly on point is a case in this district

15   that rejected Defendants' argument.  *See Clemens v. J.P. Morgan Chase Nat'l Corporate Servs.,*

16   *Inc.*, 2009 WL 4507742, at *7 (N.D. Cal. Dec. 1, 2009) ("It is undisputed that foreclosure

17   proceedings were initiated which put [plaintiff's] interest in the property in jeopardy; this fact is

18   sufficient to establish standing.").  Because foreclosure proceedings were initiated here, Plaintiff's

19   property is indeed in jeopardy and can serve as the basis for injury under Section 17204.

20         Plaintiff, however, must also show that the foreclosure proceedings resulted from

21   Defendants' conduct prohibited by the UCL.  Plaintiff is unable to make this showing.  Even if

22   Defendants' behavior in filing the defective NOD and not responding to the alleged QWR could be

23   found to violate the UCL, the undisputed facts show, as discussed above, that the alleged violations

24   did not result in any pecuniary injury.  Rather, it is Plaintiff's default on his loan prior to any of the

25

26         [10] The Court need not decide whether any of the bases for UCL liability are preempted because
     the Court finds that those bases fail for other reasons.  Additionally, the Court will not consider the new
27   bases for UCL liability in Plaintiff's Opposition.  Plaintiff has had numerous opportunities to lay out
     his claims and present his allegations in this case.  The Court will accordingly hold Plaintiff to the
28   theories of liability alleged in his TAC and will not entertain new claims raised for the first time in his
     Opposition.

United States District Court
For the Northern District of California

1  alleged behavior that is the cause of the foreclosure proceedings. *See Argueta v. J.P. Morgan*

2  *Chase*, 2011 WL 2619060, at *7 (E.D. Cal. June 30, 2011) ("Plaintiff's alleged injury is the possible

3  loss of the property.  However, plaintiff would still be faced with the possible loss of the property

4  even if defendants had not engaged in the alleged conduct involving the loan modification

5  application.").  Accordingly, Plaintiff lacks standing to bring a UCL claim based on either the

6  alleged violation of Sections 2924 and 2934a or the RESPA violation.

7         On the other hand, plaintiffs who make loan payments as the result of behavior claimed to

8  have violated the UCL have standing to pursue such a claim. *See Reyes*, 2011 WL 30759, at *18.

9  Plaintiff made at least three payments pursuant to this alleged agreement.  Additionally, Plaintiff's

10  payments need not qualify for restitution in order to maintain standing. *See Kwikset Corp.*, 51 Cal.

11  4th at 337 ("[W]e hold ineligibility for restitution is not a basis for denying standing under section

12  17204 and disapprove those cases that have concluded otherwise.").  Because Plaintiff made three

13  months of mortgage payments to OneWest as a result of the alleged oral loan modification

14  agreement, the Court concludes that he has standing to pursue his UCL claim based on the alleged

15  breach of the oral modification.[11]

16                              **b.    UCL Violation**

17         Plaintiff's UCL claim fails on the grounds that he has not put forward facts showing a UCL

18  violation.  Each of the UCL's three prongs—unlawful, fraudulent, and unfair—are discussed below.

19

20         [11] The Court's standing determination is not inconsistent with the ruling elsewhere in this Order
21  that Plaintiff's three required mortgage payments could not satisfy the detrimental reliance element of
    his promissory estoppel claim.  In *Kwikset*, the California Supreme Court overturned rulings that held
22  that UCL standing was limited to those economic injuries that qualified for restitution, noting that the
    standards for establishing standing under Section 17204 and eligibility for restitution under Section
23  17203 are "wholly distinct." *Kwikset Corp.*, 51 Cal. 4th at 335-36.  The Court also stated that the
    overturned rulings "conflate[] the issue of standing with the issue of the remedies to which a party
24  may be entitled.  That a party may ultimately be unable to prove a right to damages (or, here, restitution) does
    not demonstrate that it lacks standing to argue for its entitlement to them." *Id.* at 336 (quoting
25  *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 789 (2010)).  Like restitution, promissory estoppel is
    "essentially equitable in nature." *C & K Eng'g Contractors v. Amber Steel Co.*, 23 Cal. 3d 1, 8 (1978);
26  *see Kajima/Ray Wilson v. Los Angeles County Metro. Transp.*, 23 Cal. 4th 305, 310 (2000) ("Promissory
    estoppel is 'a doctrine which employs equitable principles to satisfy the requirement that consideration
27  must be given in exchange for the promise sought to be enforced.'") (quoting *Raedeke*, 10 Cal. 3d at
    672).  The doctrine operates "if injustice can be avoided only by enforcement of the promise."
28  Restatement (Second) of Contracts § 90 (1981).  The UCL standing inquiry, however, is "wholly
    distinct" from the equitable principles which underlie the promissory estoppel and restitution doctrines.

### i.      Unlawful Conduct

In order to maintain a claim under the UCL based on unlawful conduct, a plaintiff must present facts sufficient to establish a violation of some law.  In his complaint, Plaintiff asserts that the violation of the California foreclosure statutes, the RESPA violation, and the breach of the oral loan modification agreement serve as the basis for the UCL claim.

Regarding the alleged violation of Sections 2924 and 2934a, Plaintiff has not claimed any relief to which he is entitled.  Under Section 17203, "Prevailing plaintiffs are generally limited to injunctive relief and restitution . . . [and] may not receive damages . . . or attorney fees." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular*, 20 Cal. 4th 163, 179 (1999).  The Court will not enjoin the foreclosure because, as discussed above, Plaintiff is unable to show he was prejudiced by the alleged violation—a requirement for obtaining relief from a procedural irregularity during the foreclosure proceedings.  Additionally, Plaintiff has not claimed, and the facts do not support, any restitutionary damages arising out of the defective NOD.  Even if there is unlawful conduct here, Plaintiff is not entitled to any relief he claims and the Court accordingly grants summary judgment for Defendants on this basis.

As stated elsewhere in this Order, the Court finds that Plaintiff has not established any facts that would support a RESPA violation.  Likewise, the alleged breach of a contract to modify cannot support this claim.  As discussed above, as a matter of law, no "contract" was created, and no claim for promissory estoppel will lie.  Because Plaintiff does not establish any unlawful conduct, Plaintiff's UCL claim fails and summary judgment is granted for Defendants as to a UCL claim based on unlawful conduct.

### ii.      Fraudulent Conduct

Plaintiff cannot maintain his UCL claim based on the "fraudulent" prong because he does not allege in his TAC that any Defendant violated this particular prong.  Moreover, in order to maintain a claim under the UCL based on fraudulent conduct, Plaintiff must put forward particular facts sufficient to establish that the public would likely be deceived by Defendants' conduct.  Plaintiff, however, has not met this standard because he has not even identified the specific deceptive statements or omissions he believes fall under this prong or presented facts showing why those

specific statements or omissions would be likely to deceive the public.  Therefore, Plaintiff's claim based on fraudulent conduct fails as a matter of law and summary judgment is granted for Defendants.[12]

### iii.    Unfair Conduct

As discussed above, Plaintiff makes no claim in his TAC, or in any of his first three complaints, that any Defendant violated the UCL's "unfair" prong.  Because Plaintiff has had numerous opportunities to properly allege his claims, the Court will hold Plaintiff to the allegations in his TAC and will not consider claims presented for the first time in his Opposition.  Furthermore, Plaintiff's conclusory allegations in his Opposition are insufficient to support a claim under the "unfair" business practice prong, since he has not put forward facts showing that Defendants' conduct is unfair under any of the three tests set forth above.

Because Plaintiff is unable to produce evidence of a UCL violation, his claim fails as a matter of law as to all Defendants.

## V.    CONCLUSION

For the reasons stated above, Defendants' Motion is GRANTED.  Plaintiff's complaint is dismissed, in its entirety, with prejudice.

IT IS SO ORDERED.


Dated: February 1, 2012


_____
JOSEPH C. SPERO
United States Magistrate Judge

---

[12]  Although rejected by this Court for failure to include the allegations in his four complaints on file with the court,  Plaintiff's UCL claim based on untrue or misleading statements under Section 17500 fails as a matter of law because he fails to allege facts identifying specific statements, including facts showing how the statements were untrue or misleading.  *See Chua v. Barratt Am.*, 2010 WL 987020, at *3 (S.D. Cal. Mar. 17, 2010) (dismissing claim for violation of Section 17500 because complaint failed to identify particular fraudulent statements or facts showing lender's statements were misleading).

United States District Court
For the Northern District of California